# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**RAYMOND R. SCHWAB AND
AMELIA D. SCHWAB,**

     **Plaintiffs,**

**v.**

**KRIS KOBACH, et al.,**

     **Defendants.**

**Case No. 18-2488-DDC-GEB**

## MEMORANDUM AND ORDER

This matter comes before the court on 11 pending motions to dismiss filed by 24 of the defendants in this case. The case was transferred to this court from the District of Colorado, where pro se plaintiffs Raymond and Amelia Schwab had filed both an 84-page Complaint (Doc. 1) and a form complaint, docketed as an "Amended Complaint" (Doc. 7). The "Amended Complaint" appears to supplement plaintiffs' original Complaint because it references pages in the original Complaint. And, plaintiffs assert, they "were asked . . . to file the complaint using a specific format and template so they placed the same complaint on the form provided by the court." Doc. 107 at 1. Thus, the court construes Doc. 1 and Doc. 7 as the Complaint when addressing defendants' dismissal arguments in this case. This interprets plaintiffs' filings liberally and thus holds them to a more forgiving standard than pleadings drafted by experienced counsel.[1]

_____

[1] Because plaintiffs proceed pro se, the court construes their filings liberally and holds them to "a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[I]f the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."); *see also Clark v. Oklahoma*, 468 F.3d 711, 713 n.1 (10th Cir. 2006). But the court does not become an advocate for the pro se parties. *See Hall*, 935 F.2d at 1110. Likewise,

Plaintiffs also have filed a "Joint Motion to Withdraw"[2] (Doc. 102), which asks the court to dismiss the claims against five defendants without prejudice.  Three of those defendants—Kris Kobach, Randy Debenham, and Blake Robinson—have responded to that motion.

Finally, plaintiffs have filed a "Joint Request for Judicial Notice that All Required Pleadings and Responses Have Been Entered and a Request to Rule on Motions or Set Hearing Date to Hear and Rule on Motions."[3]  Doc. 121.  This motion asks the court to rule on the pending motions.  Because this Order rules all pending motions, the court denies plaintiffs' most recent motion—Doc. 121—as moot.

The court addresses all 11 motions to dismiss and plaintiffs' "Joint Motion to Withdraw" in this Order.  For reasons explained below, the court makes the following rulings:

*First*, the court grants plaintiffs' motion to dismiss all claims asserted against defendants Kris Kobach,[4] Rhonda Eisenbarger, Deja Jackson, Randy Debenham, and Blake Robinson.

*Second*, the court grants the motions to dismiss filed by Miranda Johnson; Sunflower CASA Project, Inc. ("CASA"); Barry Wilkerson, Bethany Fields, Carla Swartz, Julia Goggins,

---

plaintiffs' pro se status does not excuse them from complying with the court's rules or facing the consequences of noncompliance.  *See Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

[2]      Though plaintiffs represent that the motion made in Doc. 102 is a joint one, they have not complied with D. Kan. Rule 7.1(b).  That Rule provides that "[i]f a motion is joint or unopposed, the caption and the body of the motion must so state.  Also, the movant must submit a proposed order with the motion."  D. Kan. Rule 7.1(b).  Also, Randy Debenham and Blake Robinson have responded to plaintiffs' motion, opposing plaintiffs' request to dismiss them from the case without prejudice.  The court thus does not construe plaintiffs' motion as an unopposed or joint motion.

[3]      Again, though plaintiffs represent that the motion is a joint one, they have not complied with D. Kan. Rule 7.1(b).  The court thus does not construe plaintiffs' motion as an unopposed or joint motion.

[4]      As a matter of docket hygiene, the court substitutes plaintiffs' official capacity claim against defendant Kobach for an official capacity claim against his successor in that office—current Kansas Secretary of State Scott Schwab.  Fed. R. Civ. P. 25(d).

the Riley County Police Department ("RCPD") and Pathways Family Services, LLC ("Pathways"); and Theresa Freed,[5] Kendra Baker, Gina Mier-Hummel,[6] Angie Suther, Kim Yoxell,[7] and the Kansas Department for Children and Families ("KDCF").

*Third*, the court grants in part and denies in part the motions to dismiss filed by St. Francis Community Services, Inc. ("St. Francis");[8] Lora Ingels; Kathy Boyd, Laura Price, and Kaylee Posson; KVC Behavioral Healthcare, Inc. ("KVC"); and Pawnee Mental Health Services, Inc. ("PMHS").

*Last*, the court orders plaintiffs to serve defendants Theresa Freed, Kendra Baker, Phyllis Gilmore, Angie Suther, and Kim Yoxell—all sued in their individual capacities—properly, no later than **October 25, 2019**.

The rest of this Order explains the reasons for the court's decisions. It begins with plaintiffs' "Joint Motion to Withdraw." Concluding that plaintiffs intended for their joint motion to dismiss certain claims against some defendants, the court analyzes it under the familiar rubric of Rule 41. Then, the court turns to defendants' 11 motions to dismiss.

---

[5]     In her brief supporting her Motion to Dismiss (Doc. 55), defendant Theresa Freed notes that her legal married name is Theresa Marie Barnes.

[6]     As a housekeeping matter, the court substitutes plaintiffs' official capacity claim against defendant Gilmore for an official capacity claim against her successor in that office—current KDCF secretary Gina Meier-Hummel. Fed. R. Civ. P. 25(d).

[7]     The court notes plaintiffs purported to "withdraw" their official capacity claims against defendants Freed, Baker, Gilmore, Suther, and Yoxell in plaintiffs' "Response to Defendant DCF, Kim Yoxell, Angie Suther Et. Al Motion to Dismiss." Doc. 86 at 5. But, plaintiffs did not file anything asking the court for leave to withdraw these claims. The court could consider plaintiffs' claims against these defendants abandoned but nevertheless addresses defendants Freed, Baker, Gilmore, Suther, and Yoxell's arguments.

[8]     In its brief supporting its Motion to Dismiss (Doc. 46), defendant St. Francis Community Services notes that its legal name is "Saint Francis Community Services, Inc."

I.      **Plaintiffs' "Joint Motion to Withdraw" (Doc. 102)**

On February 8, 2019, plaintiffs filed a "Joint Motion to Withdraw" their claims against

defendants Kobach, Eisenbarger, Jackson, Debenham, and Robinson.  Doc. 102.  Plaintiffs filed

their motion after defendants Debenham, Robinson, and Kobach filed their Motions to Dismiss

(Docs. 59 & 64).  The docket does not reflect that plaintiffs ever served Eisenbarger or Jackson

with a summons.  For reasons explained below, the court grants plaintiffs' motion.

**A.  Legal Standard for Voluntary Dismissal**

Federal Rule of Civil Procedure 41(a)(1) allows a plaintiff to dismiss a claim voluntarily

without a court order under certain circumstances.  "[T]he plaintiff may dismiss an action

without a court order by filing . . . a notice of dismissal before the opposing party serves either an

answer or a motion for summary judgment[.]"  Fed. R. Civ. P. 41(a)(1)(A), 41(a)(1)(A)(i).

Specifically, a "motion to dismiss under Rule 12 does not terminate the right of dismissal by

notice."  *Davidson v. Thompson*, No. 18-3084-SAC, 2019 WL 1317465, at *1 (D. Kan. Mar. 22,

2019).

Also, Federal Rule of Civil Procedure 41(a)(2) permits a plaintiff to dismiss a case

voluntarily "only by court order, on terms that the court considers proper."  "The rule is designed

primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the

imposition of curative conditions."  *Brown v. Baeke*, 413 F.3d 1121, 1123 (10th Cir. 2005)

(citation omitted).  Ordinarily, district courts should grant a Rule 41(a)(2) dismissal without

prejudice "[a]bsent 'legal prejudice' to the defendant."  *Ohlander v. Larson*, 114 F.3d 1531,

1537 (10th Cir. 1997).

As the court explained in *City of Scranton v. Orr Wyatt Streetscapes*, No. 18-4035-DDC-

TJJ, 2018 WL 4222414, at *1–2 (D. Kan. July 16, 2018), a plaintiff may dismiss voluntarily all

claims against fewer than all defendants under Rule 41(a)(1)(A)(i).  Allowing a plaintiff to stipulate to dismiss fewer than all defendants from a multi-defendant case—instead of requiring plaintiff to file an amended pleading—advances the aims of Federal Rule of Civil Procedure 1, which directs federal courts to construe the Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.

### B.  Analysis

####    1.  The court grants plaintiffs' "Joint Motion to Withdraw" their claims against defendant Kobach, in his individual capacity, and defendant Schwab, in his official capacity.

Plaintiffs' motion asserts that they have inadequate resources to pursue their claims against Mr. Kobach.  Thus, they ask the court to dismiss the claims against him.  But, because Mr. Kobach has filed a Motion to Dismiss, plaintiffs maintain their "right of dismissal by notice."  *Davidson*, 2019 WL 1317465, at *1.  As Mr. Kobach explains in his response to plaintiffs' motion, the court should construe the motion—at least, as it applies to him—as a notice of voluntary dismissal under Fed. R. Civ. P. 41(a)(1)(A)(i), since Mr. Kobach has not filed an answer or a motion for summary judgment.  The court thus construes plaintiffs' motion as a voluntary dismissal under Rule 41.  And with plaintiffs' filing, they have dismissed voluntarily defendant Mr. Kobach from the case.  The court notes that this dismissal applies to both the official capacity claims against current Secretary of State Scott Schwab and the individual capacity claims against Kris Kobach.  The court thus dismisses both defendants from this action.  Mr. Kobach's Motion to Dismiss (Doc. 64) is denied as moot.

####    2.  The court grants plaintiffs' "Joint Motion to Withdraw" their claims against Rhonda Eisenbarger and Deja Jackson.

Plaintiffs' motion also asserts that they were unable to locate and serve Rhonda Eisenbarger and Deja Jackson, both named as defendants in plaintiffs' Complaint.  Doc. 1 at 2.

The motion asks the court to dismiss the claims against Ms. Eisenbarger and Ms. Jackson without prejudice.  Again, plaintiffs failed to serve Ms. Eisenbarger and Ms. Jackson and, as one would expect, neither Ms. Eisenbarger nor Ms. Jackson has filed a response of any kind.  Thus, as it applies to Ms. Eisenbarger and Ms. Jackson, Rule 41(a)(1)(A)(i) permits plaintiffs to maintain their "right of dismissal by notice."  *Davidson*, 2019 WL 1317465, at *1.  The court construes plaintiffs' motion—as it applies to Ms. Eisenbarger and Ms. Jackson—as a notice of voluntary dismissal under Fed. R. Civ. P. 41(a)(1)(A)(i), since neither has filed any responsive pleading.

### 3. The court grants plaintiffs' "Joint Motion to Withdraw" their claims against defendants Randy Debenham and Blake Robinson and denies those defendants' Motion to Dismiss (Doc. 59) as moot.

Plaintiffs' Motion to Withdraw also seeks to withdraw their claims against Mr. Debenham and Mr. Robinson.  Plaintiffs filed their motion after Mr. Debenham and Mr. Robinson filed a Motion to Dismiss that, alternatively, moves for summary judgment "to the extent that facts beyond the allegations of the Complaint are necessary to resolve the issues." Doc. 60 at 1.  Also, as our local rule 56.1(f) requires, Mr. Debenham and Mr. Robinson filed a "Notice to Pro Se Litigants Who Oppose a Motion for Summary Judgment."  Doc. 61.

Although plaintiffs have filed a motion to withdraw their claims against Mr. Debenham and Mr. Robinson voluntarily after these defendants have filed a motion to dismiss or in the alternative, summary judgment, the court follows a recent decision from our court and construes plaintiffs' motion as a notice of voluntary dismissal.  *See Davidson*, 2019 WL 1317465, at *1 (concluding that plaintiff's "motion to withdraw . . . should have been considered a notice of unilateral voluntary dismissal under Rule 41(a)(1)" after defendant filed a motion to dismiss).  Courts are divided on the question of "what procedural event transforms a pending, undecided

motion to dismiss into one for summary judgment for the purposes of Rule 41(a)(1)(A)(i)."

8 J.W. Moore et al., *Moore's Federal Practice – Civil* § 41.33 (3d ed. 2010).  But, Moore's

Federal Practice explains,

> [t]he better view is that a formal, court-ordered conversion is required:  thus, a notice of dismissal may be vacated only if filed after the time that the court has actually reviewed the motion to dismiss, determined whether to include or exclude the extraneous matters, notified the parties of the conversion to Rule 56, and expressly afforded the parties a reasonable opportunity to present materials relevant to a motion for summary judgment.

*Id.*; *see also* 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2363

(3d ed. 2019) ("[U]nless formally converted into a motion for summary judgment under Rule 56,

a significant number of decisions make . . . it clear that a motion to dismiss under Rule 12 does

not terminate the right of dismissal by notice.").

Here, the court has not yet ruled on Mr. Debenham and Mr. Robinson's motion to

dismiss.  Also, the court also has not converted the motion to dismiss into one for summary

judgment.  The court follows the majority view which requires formal conversion of a motion to

dismiss into a summary judgment motion before precluding a plaintiff from dismissing a party

voluntarily under Rule 41(a)(1)(A)(i).  And, the court grants plaintiffs' motion to withdraw their

claims against Mr. Debenham and Mr. Robinson.  For the same reasons, the court denies Mr.

Debenham and Mr. Robinson's Motion to Dismiss (Doc. 60) as moot.

II.   **Defendants Barry Wilkerson, Bethany Fields, Carla Swartz, Julia Goggins, Riley County Police Department, and Pathways Family Services, LLC; St. Francis Community Services, Inc.; Miranda Johnson; Lora Ingles; Sunflower CASA Project, Inc.; Kathy Boyd, Laura Price, and Kaylee Posson; KVC Behavioral Healthcare, Inc.; Pawnee Mental Health Service, Inc.; and Kansas Department for Children and Families, Theresa Freed, Kendra Baker, Gina Meier-Hummel, in her official capacity, Phyllis Gilmore, in her individual capacity, Angie Suther, and Kim Yoxell's Motions to Dismiss**

A.  **Background**

Plaintiffs filed their Complaint in this case on August 27, 2018 (Doc. 1).  Then, nine days later, plaintiffs filed another document docketed as an "Amended Complaint" (Doc. 7).  Their original Complaint is an 84-page filing containing factual and legal allegations.  But, their "Amended Complaint" alleges only basic information about this action on a form complaint, including identifying information about plaintiffs and each defendant and the basis for subject matter jurisdiction over this case.  In blank spaces where plaintiffs are instructed to make a "statement of [their] claim(s)" and explain their "request for relief," plaintiffs merely have referenced an "[a]ttached [c]omplaint."  Doc. 7 at 11–12.  They never filed this "attached complaint" as an attachment to Doc. 7.  But the page numbers correspond exactly with the original Complaint.  And, plaintiffs allege that they "were asked . . . to file the complaint using a specific format and template so they placed the same complaint on the form provided by the court."  Doc. 107 at 1.  Thus, the court construes the filing docketed as an "Amended Complaint" as a supplement to the Complaint and not a new pleading.

When considering a motion to dismiss, the court accepts facts asserted by the Complaint as true and views them in the light most favorable to plaintiffs.  *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (citing *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Many of the facts asserted in plaintiffs' Complaint are

identical to facts plaintiffs asserted in an earlier lawsuit.  The court dismissed that case in 2016.  *Schwab v. Kansas*, No. 16-CV-4033-DDC-KGS, 2017 WL 2831508 (D. Kan. June 30, 2017).

### B.  Facts

Mr. and Mrs. Schwab are the natural parents of four children.  Mrs. Schwab is the mother of a fifth child, and Mr. Schwab is his stepfather.  In April 2015, Mr. and Mrs. Schwab allowed their five children to stay with their maternal grandmother in Dickinson County, Kansas.  Without the Schwabs knowing it, the maternal grandmother and a maternal uncle contacted the Riley County Police Department—RCPD—to express their concerns about how Mr. and Mrs. Schwab were caring for their children.  The RCPD removed the children from the Schwab's custody and the State of Kansas initiated proceedings in the District Court of Riley County Kansas ("District Court') to determine if the Schwab children were Children In Need of Care— CINC—under Kansas law.  *See* Kan. Stat. Ann. § 38-2202(d) (providing the statutory definition for a "child in need of care").

On April 29, 2015, the District Court held a temporary custody hearing for the five children.  At its conclusion, the District Court placed the five children in the temporary custody of the Kansas Department for Children and Families—KDCF.  The District Court appointed defendant Lora Ingels as guardian ad litem to represent the five children.  The District Court also appointed separate counsel to represent Mr. Schwab and Mrs. Schwab in the CINC case pending before the District Court.  Through counsel, Mr. and Mrs. Schwab filed separate motions seeking rehearing of the temporary custody ruling.

On May 13, 2015, the District Court held a rehearing.  Both Mr. and Mrs. Schwab attended the hearing, represented by their separate counsel.  Before the hearing started, the District Court ordered Mr. and Mrs. Schwab to submit to urinalysis and breathalyzer tests.  Both

complied with that order.  During the hearing, both Mr. and Mrs. Schwab withdrew their respective motions seeking rehearing of the temporary custody ruling.  At the end of the hearing, the District Court ordered that the five children remain in temporary KDCF custody.

On June 4, 2015, Mr. Schwab filed a pro se motion to suppress the results of the May 13, 2015 urinalysis test.  His motion asserted that the test was an unlawful search and seizure that violated his rights under the Fourth Amendment to the United States Constitution.  His motion also claimed that the test results were unreliable.

Mr. Schwab filed a complaint against his court appointed counsel with the Office of the Disciplinary Administrator.  His counsel promptly withdrew from representation.  On June 16, 2015, Mr. Schwab's complaint was dismissed.

After holding a hearing on June 11, 2015, the District Court denied Mr. Schwab's pro se motion.  Also, the District Court ordered Mr. Schwab to submit to another urinalysis and breathalyzer test.  He refused.  The District Court considered Mr. Schwab's refusal to take the tests as a positive result.  Mr. Schwab asked for new counsel and the court obliged.

On July 10, 2015, the District Court held an adjudication hearing.  Mr. Schwab attended that hearing, represented by her counsel.  Mrs. Schwab did not appear in person, but she was represented by counsel at the hearing.  The parties presented testimony and evidence during the adjudication hearing and, at its conclusion, the District Court adjudicated the children as CINC.

Mr. Schwab appealed the District Court's decision to the Kansas Court of Appeals.  Mrs. Schwab did not appeal.  On April 8, 2016, the Kansas Court of Appeals issued four orders affirming the CINC adjudication.  *See In Re C.S.*, No. 114,272, 2016 WL 1391810 (Kan. Ct. App. Apr. 8, 2016); *In re A.S.*, No. 114,273, 2016 WL 1391817 (Kan. Ct. App. Apr. 8, 2016); *In re A.S.*, No. 114,274, 2016 WL 1381818 (Kan. Ct. App. Apr. 8, 2016); *In re E.S.*, No. 114,275,

2016 WL 1391819 (Kan. Ct. App. Apr. 8, 2016).[9]  The court of appeals also rejected Mr.

Schwab's arguments that the District Court, during the CINC proceedings, had violated his

constitutional rights to due process and against unreasonable searches and seizures under the

Fourth Amendment.  *See, e.g.*, *In re C.S.*, 2016 WL 1391810, at *8, 11.  Mr. Schwab filed

Petitions for Review with the Kansas Supreme Court seeking review of the court of appeals'

decisions affirming the CINC adjudications.  The Kansas Supreme Court denied review on

October 21, 2016.

Plaintiffs then brought a lawsuit much like this one against 26 individuals and entities and

10 John Does who were or had been involved in the 2016 CINC case.  The lawsuit sought both

monetary and injunctive relief.  This court dismissed the lawsuit without prejudice on various

grounds, including Eleventh Amendment immunity, the *Younger* Abstention doctrine, the

*Rooker-Feldman* doctrine, and failing to state plausible claims for relief.  *Schwab v. Kansas*, No.

16-CV-4033-DDC-KGS, 2017 WL 2831508 (D. Kan. June 30, 2017).

In October 2016, the court held a permanency hearing to determine whether it was still

viable to reunite plaintiffs with their children.  After a lengthy hearing, the court maintained the

case plan's goal of reintegration.  The Schwab children returned home in December 2017.  The

dependency proceedings terminated in May 2018.  One child was subject to state oversight until

August 2018, when the court dismissed his case.

Throughout the Complaint, plaintiffs refer to various events without a reference date.

These include (1) the failure of many defendants to accommodate plaintiffs' religious faith, (2)

attempted vaccination of plaintiffs' children without their consent, and (3) the alleged abuse on

---

[9]     The court can take judicial notice of the Kansas Court of Appeals opinions.  *See Continental Coal, Inc. v. Cunningham*, 511 F. Supp. 2d 1065, 1071 (D. Kan. 2007) (holding that court orders in a Kansas state court case are properly subject to judicial notice.).

three of plaintiffs' children.  Doc. 1 ¶¶ 73, 79, 87.  Plaintiffs also allege that certain defendants foiled their attempt to gather signatures for a grand jury petition in November 2016.  *Id.* ¶¶ 110– 114.

## C.  Overview of Plaintiffs' Claims

Now, plaintiffs have returned to federal court with this second lawsuit.  It is similar to the first, suing 30 individuals and entities and 10 Does[10] who were involved in the 2016 CINC case. The Complaint asserts three claims under 42 U.S.C. §§ 1983 and 1985, and five claims under the Kansas Tort Claims Act ("KTCA").  The court summarizes those claims as follows:

- Counts 1 and 2 bring claims under §§ 1983 and 1985 against all defendants for alleged violations of the "Fourteenth Amendment Familial Association," "Warrantless Seizure of Children," and "violation of 4th Amendment illegal search and seizure of body fluids."  Doc. 1 at 55, 60.

- Count 3 brings claims under §§ 1983 and 1985 against St. Francis, KVC, and Does 1-10 for "*MONTELL*-Related Claims."  Doc. 1 at 62.

- Count 4 brings a claim for false light against "all individual defendants and Does 1-10."  Doc. 1 at 66.

- Count 5 asserts a claim for public disclosure of private facts against "all individual Respondents and Does 1-10."  Doc. 1 at 68.

---

[10]      Plaintiffs identify "Does 1-10" as individuals who "raised a $100.00 MUNICIPAL bond to 5000.00" when Mr. Schwab was arrested, withheld information from Mrs. Schwab, billed him for unwanted medical treatment, and threatened to "place [Mr. Schwab] in a psychiatric ward if he did not break his hunger strike."  Doc. 1 at 39.  While as an initial matter, plaintiffs may bring claims against unknown defendants as "John Doe," that permission does not last forever.  "The Federal Rules of Civil Procedure [do] not permit such actions against unnamed defendants following a suitable length of time for the plaintiff to identify the John Does."  *Culp v. Williams*, 456 F. App'x 718, 720 (10th Cir. 2012).  It is unclear to the court whether plaintiffs have made any efforts to identify "Does 1-10."

- Count 6 brings a claim for slander.  Doc. 1 at 69.  The Complaint does not specify which defendants are sued for slander.  But, the paragraphs following this Count refer to "Respondents."  Doc. 1 at 70.  The Complaint defines "Respondents" to include 22 of the 30 defendants in this case.  Doc. 1 at 13.

- Count 7 brings a claim for negligence/malpractice against Carla Swartz, KVC, St. Francis, Laura Price, Blake Robinson, Randy Debenham, Miranda Johnson, Pawnee Mental Health Services, Pathways, and Does 1-10.  Doc. 1 at 70.

- Count 8 brings a claim for malicious prosecution and abuse of power against Barry Wilkerson and Bethany Fields.  Doc. 1 at 73.

Plaintiffs seek no less than $15 million in damages.  The Complaint explains that this figure equates to "$1,000,000 per child per year they were held unlawfully and in denial of [plaintiffs'] civil [rights] and due process."  Doc. 1 at 76.

### D.  Legal Standards Governing Motions to Dismiss

All defendants move to dismiss plaintiffs' Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  The court recites each rule's governing legal standard, below.

#### 1.  Rule 12(b)(1) Standard

"Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction."  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citation omitted).  Federal district courts have original jurisdiction of all civil actions arising under the constitution, laws, or treaties of the United States or where there is diversity of citizenship.  28 U.S.C. § 1331; 28 U.S.C. § 1332.  "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citation

omitted).  Since federal courts are courts of limited jurisdiction, there is a presumption against jurisdiction, and the party invoking jurisdiction bears the burden to prove it exists.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Generally, a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) takes one of two forms:  a facial attack or a factual attack.  *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995).  "First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true."  *Id.* at 1002 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)) (internal citations omitted).

"Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends."  *Id.* at 1003 (citations omitted).  "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations."  *Id.* (citations omitted).  "A court has wide discretion to allow affidavits, other documents, and [to conduct] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."  *Id.* (citations omitted); *Los Alamos Study Grp. v. U.S. Dep't of Energy*, 692 F.3d 1057, 1063–64 (10th Cir. 2012); *see also Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324–25 (10th Cir. 2002) (holding that a court may convert a motion to dismiss to a motion for summary judgment under Fed. R. Civ. P. 56 only when the jurisdictional question is intertwined with the case's merits).

## 2.  Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'"  *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

Although the court must assume that the complaint's factual allegations are true, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* at 1263 (quoting *Iqbal*, 556 U.S. at 678).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief.  *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court may consider "not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference."  *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted).  A court also "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Id.* (quoting *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)).

**E.  Analysis**

In their motions to dismiss, defendants assert many of the same arguments to support dismissal of various claims in the Complaint.  The court addresses each argument, separately, in the following sections.

### 1. Eleventh Amendment Immunity

Claiming they are immune from suit under the Eleventh Amendment, defendants KDCF, Gina Meier-Hummel (Secretary of KDCF), and KDCF employees Theresa Freed, Kendra Baker, Angie Suther, and Kim Yoxell assert that the court lacks subject matter jurisdiction over certain claims. The Eleventh Amendment "accord[s] states the respect owed them as joint sovereigns," by granting immunity to nonconsenting states from suits in federal court. *Steadfast Ins. Co. v. Agric Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir. 2007) (citations omitted). Eleventh Amendment immunity "applies . . . whether a plaintiff seeks declaratory or injunctive relief, or money damages." *Id.* (citations omitted). Also, the Amendment's immunity extends to state entities who are considered "arm[s] of the state." *Id.* at 1253 (citing *Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).

Eleventh Amendment immunity bars suits in federal court against a state "unless the state waives immunity or Congress has validly abrogated immunity." *Nelson v. Geringer*, 295 F.3d 1082, 1096 (10th Cir. 2002) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996)). Neither exception applies here. Kansas has not waived immunity, and the Supreme Court has held that Congress did not abrogate state sovereign immunity when it enacted 42 U.S.C. §§ 1983 and 1985. *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1195–95 (10th Cir. 1998) (citing *Quern v. Jordan*, 440 U.S. 332, 338–40 (1979)). Additionally, the KTCA does not waive Eleventh Amendment Immunity. Kan. Stat. Ann. § 75-6116(g); *Jones v. Courtney*, 466 F. App'x 696, 699 (10th Cir. 2012) (colleting cases). Thus, Eleventh Amendment immunity bars plaintiffs' §§ 1983, 1985, and state tort claims (Counts 1, 2, 4, 5, and 6) against KDCF. *See Ellis*, 163 F.3d at 1195 (holding that Eleventh Amendment immunity barred plaintiffs' §§ 1981, 1983, and 1985 claims "against Kansas and its state agencies in the federal courts"); *see also*

*McCollum v. Kansas*, No. 14-1049-EFM-KMH, 2014 WL 3341139, at *6 (D. Kan. July 8, 2014), *aff'd*, 599 F. App'x 841 (10th Cir. 2015) (explaining that "DCF is the agency through which the state acts in all matters that relate to children who are found to be in need of care" and thus is "an arm of the state" immune from suit under the Eleventh Amendment).

The Eleventh Amendment also bars plaintiffs' claims seeking money damages from state officials sued in their official capacities. *Ellis*, 163 F.3d at 1196. So, the Eleventh Amendment bars plaintiffs' official capacity damage claims (Counts 1, 2, 4, 5, and 6) against defendants Gina Meier-Hummel (Secretary of KDCF), Theresa Freed, Kendra Baker, Angie Suther, and Kim Yoxell. The court, thus, grants KDCF, Hummel, Freed, Baker, Suther, and Yoxell's Motion to Dismiss in its entirety (Doc. 54).[11]

## 2. *Rooker-Feldman* Doctrine

Most defendants assert that the *Rooker-Feldman* doctrine precludes our court from exercising subject matter jurisdiction over plaintiffs' claims. *See* Docs. 46, 51, 53, 55, 57, 60, 63, 76, 78, 82. "The *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 286 n.1 (2005)). This doctrine applies "where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Id.* at 466. To permit otherwise would contravene 28 U.S.C. § 1257, which confers jurisdiction only on the Supreme Court to hear appeals from final state-court judgments. *Id.* at 463. Also, the *Rooker-Feldman* doctrine bars district courts

---

[11] The court notes that plaintiffs have not served defendants Gilmore, Freed, Baker, Suther, and Yoxell in their individual capacities. And, these defendants have not waived their right to personal service in their individual capacities. Doc. 55 at 3. The court addresses this issue below in Section II.E.4.e.

from exercising jurisdiction over claims that are "'inextricably intertwined' with the state court's judgment." *Mann v. Boatright*, 477 F.3d 1140, 1147 (10th Cir. 2007) (quoting *Exxon–Mobil Corp.*, 544 U.S. at 284).

Most defendants assert, generally, that all underlying claims against them are "inextricably intertwined" with the state court CINC judgment. *See, e.g.*, Doc. 51 at 4. Specifically, these defendants argue that plaintiffs' claims are "inextricably intertwined" with the underlying state court custody judgment. And, they contend, under the *Rooker-Feldman* doctrine, this court cannot "exercis[e] appellate jurisdiction over final state-court judgments." *Lance*, 546 U.S. at 463. And so, defendants argue that *Rooker-Feldman* bars all federal and state claims against them.

But the analysis is not so simple. *See PJ ex rel Jensen v. Wagner*, 603 F.3d 1182, 1194 (10th Cir. 2010) (finding that § 1983 claims based on misrepresentation made by defendants during juvenile court proceedings and DCF's failure to investigate before filing a petition were not barred by *Rooker-Feldman* because (1) they sought "relief independent from any judgment rendered by state courts" and (2) the claims would be identical "even if there were no state court judgments."). Unlike the plaintiffs' prior case, the Complaint in this case does not seek injunctive relief. Nor does it ask the court to overturn any state court judgments. Instead, plaintiffs seek compensation for injuries sustained while their children were in state custody. In their briefs, defendants do not identify which claims are barred by *Rooker-Feldman* and which claims are not. Defendants thus have not met their burden on their motions to dismiss to establish that all of plaintiffs' claims are barred by *Rooker-Feldman* and the court thus declines to hold that *Rooker-Feldman* bars all plaintiffs' claims. So, the court continues, in the following sections, to address alternative bases advanced for granting defendants' motions to dismiss.

### 3.  Claim Preclusion

Defendants Miranda Johnson, Barry Wilkerson, Bethany Fields, Carla Swartz, RCPD, and Pathways argue the court should dismiss plaintiffs' claims against them because claim preclusion bars the §§ 1983 and 1985 claims (Counts 1 and 2).

"Federal law governs the scope of preclusive effect given to federal-court decisions." *Atkins v. Heavy Petroleum Partners, LLC*, 86 F. Supp. 3d 1188, 1204 (D. Kan. 2015) (quoting *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1297 (10th Cir. 2014)).  Under federal law, "[c]laim preclusion requires:  (1) a judgment on the merits in the earlier action; (2) identity of the parties or their privies in both suits; and (3) identity of the cause of action in both suits." *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 (10th Cir. 1999) (citing *King v. Union Oil Co. of Cal.*, 117 F.3d 443, 445 (10th Cir. 1997)).

The Tenth Circuit "has adopted the transactional approach of the Restatement (Second) of Judgments in determining what constitutes identity of the causes of action." *Id.* (citation omitted).  This approach precludes "a claim arising out of the same transaction, or series of connected transactions as a previous suit, which concluded in a valid and final judgment." *Id.* (internal quotations omitted).  The Circuit provided the following explanation:

> [w]hat constitutes the same transaction or series of transactions is to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Id.* (internal quotations omitted).

Plaintiffs previously filed suit against many of the same defendants in 2016.  *Schwab v. Kansas*, No. 16-CV-4033-DDC-KGS, 2017 WL 2831508 (D. Kan. June 30, 2017).  The allegations against Ms. Johnson in that suit closely match plaintiffs' allegations against Ms.

Johnson here—namely, both complaints allege that Ms. Johnson repeatedly failed to represent plaintiffs adequately during state court proceedings involving custody of their children. *Compare*, Doc. 1 at 21, 25–28, 33, 34, and 54–62, *with* Revised Second Amended Complaint at 14, 25, 34, 38, 40–43, and 49–57, *Schwab v. Kansas*, No. 16-CV-4033-DDC-KGS (D. Kan. Aug. 26, 2016), Doc. 85.  The court dismissed plaintiffs' 2016 complaint against Ms. Johnson with prejudice, explaining that plaintiffs' claims—to the extent not barred by the *Rooker-Feldman* doctrine—had failed to state a plausible claim against her and several other defendants under §§ 1983 or 1985.  Applying the Tenth Circuit's claim preclusion test under federal law, the same plaintiffs sued Ms. Johnson in the 2016 suit.  That claim ended with a dismissal with prejudice on the merits of plaintiffs' claims.  The court thus concludes that claim preclusion bars plaintiffs' §§ 1983 and 1985 claims against Ms. Johnson.

Like Ms. Johnson, Mr. Wilkerson, Ms. Fields, Ms. Swartz, RCPD, and Pathways also assert that claim preclusion bars plaintiffs' claims against them.  The claims that plaintiffs assert against Mr. Wilkerson, Ms. Fields, Ms. Swartz, RCPD, and Pathways closely mirror the claims plaintiffs asserted against those defendants in their 2016 complaint—*i.e.*, that these defendants violated their constitutional rights by removing their children from their home.  *Compare*, Doc. 1 at 10, 14, 17, 18, 20, 25, 29, 30, 32, 42, 43, 49, and 50–62 *with* Revised Second Amended Complaint at 4–5, 12–14, 26–27, 33, 36, 38–42, 45–46, and 49–57, *Schwab*, No. 16-CV-4033-DDC-KGS, Doc. 85.  As explained above, to the extent plaintiffs' claims here arise from "the same transaction, or series of connected transactions as [the 2016 suit]," they are barred.  *Yapp*, 186 F.3d at 1227.  The court previously dismissed plaintiffs' claims against Mr. Wilkerson, Ms. Fields, Ms. Swartz, RCPD, and Pathways because plaintiffs failed to state plausible claims against these defendants under §§ 1983 and 1985.  Dismissal for failure to state a claim under

Rule 12(b)(6) is a "judgment on the merits" to which res judicata applies. *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1298 (10th Cir. 2014) (citing *Stewart v. Bancorp*, 297 F.3d 953, 957 (9th Cir. 2002)). Thus, claim preclusion bars plaintiffs' §§ 1983 and 1985 claims against Mr. Wilkerson, Ms. Fields, Ms. Swartz, RCPD, and Pathways.

### 4. Plaintiffs' Complaint Fails to Allege Facts Supporting Plausible §§ 1983 and 1985 Violations.

To the extent the Eleventh Amendment or claim preclusion does not bar plaintiffs' claims for money damages, the court dismisses plaintiffs' §§ 1983 and 1985 claims (Counts 1, 2, and 3) because they fail to state plausible claims for relief. The following sections explain why.

#### a. Prosecutorial, Guardian ad Litem, and Qualified Immunity

Several defendants are immune from suit.

*First*, Riley County Attorney Barry Wilkerson and Deputy County Attorney Bethany Fields enjoy prosecutorial immunity. Prosecutors are absolutely immune when "initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430, 431 (1976). Their prosecutorial immunity is limited, however, to actions that "involve the prosecutor's role as advocate" and not "his [or her] role as administrator or investigative officer." *Burns v. Reed*, 500 U.S. 478, 491 (1991) (citation and internal quotation marks omitted).

Here, plaintiffs' Complaint never alleges that Mr. Wilkerson or Ms. Fields took any actions outside their role as advocates for the State of Kansas in the CINC proceedings or other legal matters. Although plaintiffs allege Mr. Wilkerson and Ms. Fields "forced" the plaintiffs to "surrender their fourth amendment protections through drug testing under threat of termination of their parental rights" (Doc. 1 ¶ 58), plaintiffs allege that this action occurred while the prosecutors performed advocacy functions for the State. A prosecutor enjoys absolute immunity for all such actions, even if the challenged actions are false or misleading. *See, e.g.*, *Robinson v.*

21

*Volkswagenwerk AG*, 940 F.2d 1369, 1372 n.4 (10th Cir. 1991) (explaining that "[w]hether the claim involves withholding evidence, failing to correct a misconception or instructing a witness to testify evasively, absolute immunity from civil damages is the rule for prosecutors"). Prosecutorial immunity thus bars plaintiffs' §§ 1983 and 1985 claims (Counts 1 and 2) against Mr. Wilkerson and Ms. Fields.

*Second*, Riley County Detectives Carla Swartz and Julia Goggins are entitled to qualified immunity.  "Qualified immunity exists to protect public officials from the broad-ranging discovery that can be peculiarly disruptive of effective government." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (internal quotations omitted).  To avoid the qualified immunity defense on a motion to dismiss, the Tenth Circuit requires plaintiffs to "allege facts sufficient to show (assuming they are true) that defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins*, 519 F.3d at 1249 (citing *Twombly*, 550 U.S. at 570).  This standard "requires enough allegations to give the defendants notice of the theory under which their claim is made." *Id.*

Here, plaintiffs never allege any facts to support their generalized assertions against Ms. Swartz and Ms. Goggins, or to show sufficiently that each defendant plausibly violated their constitutional rights.  *See Robbins*, 519 F.3d at 1250 (holding that plaintiff failed to state plausible claims for relief because "the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction [of] what acts are attributable to whom [made] it . . . impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed.").  The allegations here are equally deficient.  The relatively few allegations plaintiffs make against Ms. Swartz and Ms. Goggins are either conclusory or too vague to provide those defendants with notice of plaintiffs'

theory of recovery.  *See Robbins*, 519 F.3d at 1249.  Qualified immunity, thus, bars plaintiffs'

§§ 1983 and 1985 claims (Counts 1 and 2) against Ms. Swartz and Ms. Goggins.

*Third*, defendant Lora Ingels, the court appointed guardian ad litem for the Schwab

children, enjoys immunity for acts "within the core duties of [her work as] a [guardian ad litem]

in assisting the court—that is, in performing a 'function [] closely associated with the judicial

process.'"  *Dahl v. Charles F. Dahl, M.D., P.C. Defined Ben. Pension Tr.*, 744 F.3d 623, 630

(10th Cir. 2014) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)).  A guardian ad litem

is not immune, however, "for acts taken in the 'clear absence of all jurisdiction.'"  *Id.* (quoting

*Stump v. Sparkman*, 435 U.S. 349, 357 (1978).  But an act does not fall outside a guardian ad

litem's jurisdiction if it is "wrongful, even unlawful"—immunity still applies when the

challenged act "was [taken] in error, was done maliciously, or was in excess of . . . authority."

*Id.* at 631 (quoting *Stump*, 435 U.S. at 356–57).

Plaintiffs' Complaint—much like their 2016 claims against Ms. Ingels—asserts claims

against Ms. Ingles only for acts she performed in her capacity as a court-appointed guardian ad

litem and in furtherance of the judicial process.  *See* Doc. 1 ¶¶ 48, 51, 56–58, 63–65, 68, 71, 73,

76, 79–81, 82, 87, 99, 102, 109, 115, 117, 120, 122, 124, 127.  Plaintiffs primarily allege that

Ms. Ingles presented false evidence at the state custody hearings, violated her duties as guardian

ad litem, refused to take certain actions during the custody hearings, and refused to provide the

plaintiffs access to documents—among other assertions.  But, even if these acts were wrongful,

unlawful, or violations of Ms. Ingels's duties as a guardian ad litem, plaintiffs allege no facts

capable of supporting a finding or inference that she acted without jurisdiction or authority such

that she is subject to liability.  *See Dahl*, 744 F.3d at 631.  Ms. Ingles thus has absolute immunity

from liability against the §§ 1983 and 1985 claims (Counts 1 and 2) asserted in plaintiffs'

Complaint.

### b. Plaintiffs' Complaint fails to allege state action sufficient to subject certain defendants to liability under § 1983.

Several defendants argue that plaintiffs' Complaint fails to allege state action sufficient to

subject them, as private parties, to liability under § 1983.  As the court explained in its Order

dismissing plaintiffs' 2016 complaint, *Schwab*, 2017 WL 2831508, at *14, to state a claim under

§ 1983, a plaintiff must allege that:  (1) "some person has deprived him [or her] of a federal

right"; and (2) "the person who has deprived him [or her] of that right acted under color of state

or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citations omitted).  When

asserting a claim against a private entity, a plaintiff must allege sufficient facts plausibly

demonstrating that the private entity's conduct allegedly causing a constitutional deprivation is

"fairly attributable to the state." *Scott v. Hern*, 216 F.3d 897, 906 (10th Cir. 2000) (citations and

internal quotation marks omitted).

The Tenth Circuit has applied four different tests to determine if a private person or entity

is subject to liability under § 1983 as a state actor:  the nexus test, the symbiotic relationship test,

the joint action test, and the public function test. *Gallagher v. Neil Young Freedom Concert*, 49

F.3d 1442, 1447 (10th Cir. 1995).  The nexus test requires a "sufficiently close nexus between

the government and the challenged conduct" and, in most cases, renders a state liable for a

private individual's conduct "only when [the State] has exercised coercive power or has provided

such significant encouragement, either overt or covert, that the choice must in law be deemed to

be that of the State." *Id.* at 1448 (citations and internal quotation marks omitted).  The symbiotic

relationship test asks whether the state "has so far insinuated itself into a position of

interdependence with a private party that [the private party] must be recognized as a joint

24

participant in the challenged activity." *Id.* at 1451 (citations and internal quotation marks omitted). The joint action test requires courts to "examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Id.* at 1453 (citations omitted). Finally, the public function test asks whether the challenged action is "a function traditionally exclusively reserved to the State." *Id.* at 1456 (citations and internal quotation marks omitted).

Here, no matter which test is invoked, plaintiffs' Complaint asserts no facts capable of stating a plausible claim against many defendants—all private actors—for conduct that was "fairly attributable to the state." *Scott*, 216 F.3d at 906. These defendants are: (1) KVC; (2) Pathways; (3) CASA; (4) St. Francis; (5) Ms. Boyd; (6) Ms. Price; (7) Ms. Posson; (8) Ms. Johnson; and (9) PMHS. Here, plaintiffs' Complaint just makes conclusory allegations that these defendants have acted under color of state law and acted in concert with or conspired with state actors by removing their children from their custody and denying them their constitutional rights. *See* Complaint ¶¶ 29, 34, 81, 135–36, 147–48. But conclusions can't carry the day. As with plaintiffs' 2016 complaint, plaintiffs plead no facts sufficient to support a finding that a meeting of the minds occurred, agreement among the defendants, or a general conspiracy. And, they allege no additional facts establishing how a factfinder fairly could attribute the conduct of these defendants to the state of Kansas. Thus, the court dismisses plaintiffs' § 1983 claims against defendants KVC, Pathways, CASA, St. Francis, Ms. Boyd, Ms. Price, Ms. Posson, Ms. Johnson, and PMHS.

### c. Plaintiffs' Complaint fails to allege plausible claims under § 1985.

Plaintiffs likewise have failed to state a plausible § 1985 claim against any defendant. To state a plausible § 1985 claim, a plaintiff must allege class-based or racially discriminatory

animus.  *See Jones v. Norton*, 809 F.3d 564, 578 (10th Cir. 2015) ("Among other elements,

[§ 1985(2) and (3)] require a showing of 'some racial, or perhaps otherwise class-based,

invidiously discriminatory animus behind the conspirators' action.'" (quoting *Griffin v.

Breckenridge*, 403 U.S. 88, 102 (1971))).  Here, plaintiffs never allege any defendant acted with

discriminatory animus.  They thus have failed to allege an essential requirement of a claim under

§ 1985.  The court dismisses all of plaintiffs' § 1985 claims in Counts 1, 2, and 3.

### d.  RCPD is not a legal entity subject to suit.

As the court explained when it dismissed plaintiffs' 2016 complaint, RCPD is not a legal

entity subject to suit.  In Kansas, "subordinate government agencies do not have the capacity to

sue or be sued in the absence of statute."  *Hopkins v. State*, 702 P.2d 311, 316 (Kan. 1985)

(holding that the Kansas Highway Patrol is a government agency not subject to suit).  Our court

consistently has held that the RCPD is a "subordinate government entity" that "does not have the

capacity to be sued."  *Rivera v. Riley Cty. Law Bd.*, No. 11-2067-JAR-JPO, 2011 WL 4686554,

at *2 (D. Kan. Oct. 4, 2011); *see also Lowery v. Cty. of Riley*, No. 04-3101-JTM, 2005 WL

1242376, *7 (D. Kan. May 25, 2005) (concluding that no statutory authorization confers the

capacity to sue and to be sued on the Riley County Police Department).  The Complaint alleges

no facts capable of plausibly supporting a contrary outcome.  Plaintiffs again have failed to state

a claim for relief against RCPD.  The court thus dismisses plaintiffs' §§ 1983 and 1985 claims

against RCPD in Counts 1 and 2.

### e.  Individual Capacity Claims against KDCF workers Phyllis Gilmore, Kendra Baker, Theresa Freed, Angie Suther, and Kim Yoxell.

In their Motion to Dismiss, Phyllis Gilmore, Kendra Baker, Theresa Freed, Angie Suther,

and Kim Yoxell assert that plaintiffs never have served them in their individual capacities with

process.  Doc. 55.  But, they don't move to dismiss plaintiffs' individual capacity claims based

26

on insufficient service.  Doc. 55 at 3.  Instead, they assert that they have not waived service.  *Id.*
Plaintiffs acknowledge that they did not properly serve these defendants in their individual
capacity.  Doc. 86 at 5.  But since receiving notice of defective service, plaintiffs have not taken
steps to secure proper service upon these defendants for their individual capacity claims.
Plaintiffs express difficulty finding addresses for defendants and ask the court to order
defendants' counsel to provide individual addresses.  *Id.*  They don't cite any legal authority
suggesting that the court can impose such an order on a party not subject to the court's
jurisdiction.  The court denies plaintiffs' request.

Federal Rule of Civil Procedure 4(m) requires the court to dismiss actions against
unserved defendants upon notice to the plaintiffs.  Fed. R. Civ. P. 4(m).  To date, plaintiffs have
not served Ms. Gilmore, Ms. Baker, Ms. Freed, Ms. Suther, and Ms. Yoxell in their individual
capacities.  Because plaintiffs have noted the difficulty they have had with service, the court
exercises its discretion and extends the time for service for 30 more days from the date of this
Order.  The court thus orders plaintiffs, to serve Ms. Gilmore, Ms. Baker, Ms. Freed, Ms. Suther,
and Ms. Yoxell in their individual capacities on or before **October 25, 2019**.  Failing to do so
likely will cause their dismissal.

### 5.  Plaintiffs' State Law Claims

Plaintiffs' Complaint alleges state law tort claims under the KTCA.  They include claims
for false light (Count 4), public disclosure of private facts (Count 5), and slander, (Count 6)
against all defendants.  Doc. 1 at 66–69.  And, plaintiffs' Complaint alleges claims for
negligence/malpractice (Count 7) against Carla Swartz, KVC, St. Francis, Laura Price, Miranda
Johnson, PMHS, and Pathways, and malicious prosecution (Count 8) against Barry Wilkerson

and Bethany Fields.  Doc. 1 at 70, 73.  Below, the court addresses the parties' dismissal arguments directed at the state law causes of action.

### a. Plaintiffs' Complaint does not allege sufficient facts to demonstrate that the court may exercise diversity subject matter jurisdiction over plaintiffs' state law claims.

Most defendants ask the court to decline supplemental jurisdiction over plaintiffs' state law claims.  In response, plaintiffs assert that the court has subject matter jurisdiction over their state law claims against the defendants under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.  But plaintiffs do not allege facts establishing that all defendants are jointly liable for aggregate damages to support the court's diversity jurisdiction under § 1332.  "Every separate and distinct claim must individually meet the amount in controversy."  *Watson v. Blankinship*, 20 F.3d 383, 386 (10th Cir. 1994).  "[W]hen there are two or more defendants, plaintiff may aggregate the amount against the defendants to satisfy the amount in controversy requirement only if the defendants are jointly liable."  *LM Ins. Corp. v. Spaulding Enterprises Inc.*, 533 F.3d 542, 548 (7th Cir. 2008) (quoting *Middle Tennessee News Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1081 (7th Cir. 2001)).  The court concludes that plaintiffs have not alleged sufficient facts to demonstrate that defendants are jointly and severally liable for plaintiffs' injuries.  The court thus cannot exercise diversity subject matter jurisdiction over plaintiffs' state law claims (Counts 4–8) against these defendants because the court lacks diversity jurisdiction to decide them.

### b. The court may not decline supplemental jurisdiction over plaintiffs' remaining state law claims because the court has not dismissed all federal claims.

The court next considers whether it may decline to exercise supplemental jurisdiction over plaintiffs' state law tort claims (Counts 4–8).  Under 28 U.S.C. § 1367(c), the court may

decline to exercise supplemental jurisdiction over plaintiffs' state law claims against defendants if: (1) the "claim raises a novel or complex issue of State law"; (2) "the claim substantially prenominates over the claim or claims over which the district court has original jurisdiction"; (3) it has "dismissed all claims over which it has original jurisdiction"; or (4) there are "exceptional circumstances" or "other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(1)–(4).

Most defendants have asked the court to decline to exercise supplemental jurisdiction because the court has "dismissed all claims over which the district court has original jurisdiction." *Id.* (c)(3). Defendants' argument misses the mark. While the court has dismissed most of plaintiffs' federal claims, federal claims remain against defendants Amanda Allison-Ballard, Michelle Allison, and Anthony Allison. If at least one federal claim remains, the court "has mandatory supplemental jurisdiction over all claims and parties related." *Gudenkauf v. Stauffer Commc'ns, Inc.*, 896 F. Supp. 1082, 1084 (D. Kan. 1995) (citing *Palmer v. Hospital Authority of Randolph County*, 22 F.3d 1559, 1569 (11th Cir. 1994)). Thus, currently, the court cannot decline supplemental jurisdiction because some federal claims remain against some defendants in this case.

The motions by defendants Kathy Boyd, Laura Price, Kaylee Posson, Lora Ingles, KVC, PMHS, and St. Francis merely asked the court to decline supplemental jurisdiction over any remaining state law claims. *See*, *e.g.*, Doc. 57. These motions did not prove an alternative basis for dismissal of the state law claims. So, the court denies their motions to dismiss plaintiffs' state law claims against them.

### c.   Plaintiffs' Complaint fails to state a claim against Mr. Wilkerson, Ms. Fields, Ms. Swartz, Ms. Goggins, Ms. Johnson, Pathways, and CASA.

Turning to the substantive deficiencies of plaintiffs' state law claims, the court dismisses plaintiffs' state law claims against Mr. Wilkerson, Ms. Fields, Ms. Swarts, Ms. Goggins, Ms. Johnson, Pathways, and CASA because the Complaint fails to state plausible claims for relief. The following sections explain why dismissal of the state law claims against these seven defendants is warranted under Fed. R. Civ. P. 12(b)(6).

### i.   Mr. Wilkerson, Ms. Fields, Ms. Swartz, and Ms. Goggins are immune from suit.

Plaintiffs' Complaint alleges several torts, *i.e.*, claims for false light, public disclosure of private facts, slander, negligence, and malpractice, under the Kansas Tort Claims Act—the KTCA.  Under the KTCA, a governmental agency may be liable for damage caused by its employees if those employees were acting within the scope of their employment.  Kan. Stat. Ann. § 75-6103.  The KTCA also recognizes several types of immunity, including discretionary function immunity, law enforcement immunity, and qualified immunity.  *See* Kan. Stat. Ann. § 75-6104(c), (e), (n).  "The Kansas Tort Claims Act is an 'open-ended' act; liability is to be the rule while immunity is to be the exception." *Burgess v. West*, 817 F. Supp. 1520, 1524–25 (D. Kan. 1993).  "[T]he burden is upon the defendant governmental entity to establish immunity under one or more of the exceptions of K.S.A. 75-6104." *Conrad v. Bd. of Johnson Cty. Comm'rs*, 237 F. Supp. 2d 1204, 1260 (D. Kan. 2002).

*First*, as under federal law, defendants Barry Wilkerson and Bethany Fields have prosecutorial immunity under Kansas law.  *See Knight v. Neodesha, Kan., Police Dep't*, 620 P.2d 837, 843 (Kan. Ct. App. 1980) (citing *Imbler*, 424 U.S. at 422–24).  This includes "conduct in investigations."  *Id.* (citing *Sampson v. Rumsey*, 563 P.2d 506 (1977)).  Plaintiffs allege tort

claims against Mr. Wilkerson and Ms. Fields for actions taken in their roles as advocates for the State of Kansas in the CINC proceedings or other legal matters.  As with the federal claims, Mr. Wilkerson and Ms. Fields are absolutely immune from suit based on state law. The court, thus, dismisses plaintiffs' state law claims (Counts 4, 5, 6, and 8) against Mr. Wilkerson and Ms. Fields.

*Second*, Carla Swartz and Julia Goggins have police protection immunity.  Kan. Stat. Ann. § 75-6104(n).  Plaintiffs' Complaint alleges Ms. Swartz and Ms. Goggins failed to investigate certain allegations during their CINC case.  Doc. 1 at 17 (Compl. ¶ 41).  Kansas courts have emphasized that claims that "run to the nature and type of police protection utilized . . . are exactly the kind of actions . . . found to be immunized by the KTCA." *Gragg v. Wichita State Univ.*, 934 P.2d 121, 1061 (Kan. 1997).  Also, to the extent plaintiffs' Complaint alleges the tort of slander for statements made by Ms. Swartz and Ms. Goggins as witnesses, they are absolutely immune from suit based on state law. *See Allin v. Schuchmann*, 886 F. Supp. 793, 789 (D. Kan. 1995) ("A defendant is not liable for appearing as a witness even though the testimony may be perjured because the necessities of a free trial demand that witnesses are not deterred by fear of tort suits.") (internal quotations omitted).  And, statements and reports made during police investigations are subject to a qualified privilege. *Polson v. Davis*, 635 F. Supp. 1130, 1148 (D. Kan. 1986) (Applying Kansas law and holding "A communication is qualifiedly privileged if it is made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty") (quoting *Bradford v. Mahan*, 548 P.2d 1223, 1228 (1976)).  The court concludes that Ms. Swartz and Ms. Goggins are immune from plaintiffs' state law claims for false light (Count 4), public disclosure of private facts (Count 5), and slander (Count 6).  It, thus, dismisses those claims against Ms. Swartz and Ms. Goggins.

### ii.   The statute of limitations bars plaintiffs' state law claims against Ms. Johnson.

Plaintiffs assert state law claims against Ms. Johnson for false light (Count 4), public disclosure of private facts (Count 5), slander (Count 6), and negligence/legal malpractice (Count 7).  Ms. Johnson argues in her motion that the statute of limitations bars all of plaintiffs' state law claims because she withdrew from representing Mrs. Schwab more than two years before plaintiffs filed their lawsuit.[12]

Kan. Stat. Ann. § 60-513(a)(4) provides the Kansas limitations period for personal injury actions.  It provides, "An action for injury to the rights of another . . . shall be brought within two years."  Kan. Stat. Ann. § 60-513(a)(4).  Ms. Johnson withdrew from her representation of Mrs. Schwab on April 27, 2016.  Doc. 76-1.  Plaintiffs filed this action on September 11, 2018.  Thus, the only actionable personal injury claims against Ms. Johnson are those that accrued on or after September 11, 2016.

Plaintiffs never allege Ms. Johnson took any action after she withdrew from representation on April 27, 2016.  Ms. Johnson withdrew from representation of Mrs. Schwab because plaintiffs had named Ms. Johnson in a prior lawsuit.  *See* Amended Complaint, *Schwab v. Kansas*, No. 16-4033-DDC-KGS (D. Kan. Apr. 25, 2016), ECF No. 9.  Any injury caused by Ms. Johnson thus was ascertainable because plaintiffs had alleged in their prior lawsuit that Ms. Johnson had injured them.  *See id.*; *See also Dearborn Animal Clinic, P.A. v. Wilson*, 806 P.2d 997, 1006 (Kan. 1991) ("If it is clear that the plaintiff in a potential legal malpractice action has

---

[12]     The court may take judicial notice of Ms. Johnson's withdrawal under state court order.  *See Continental Coal, Inc.*, 511 F. Supp. 2d at 1071 (taking judicial notice of "pleadings, court orders, motions, and certified transcripts of hearings from [a related] state court case" to decide a Rule 12(c) motion); *see also S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd*, 181 F.3d 410, 426 (10th Cir. 1999) ("To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint.").  Plaintiffs do not challenge that Ms. Johnson's representation ended in April 2016.

incurred injury and if it is reasonably ascertainable that such injury was the result of the defendant attorney's negligence, then . . . the statute begins to run at the time it is reasonably ascertainable that the injury was caused by the attorney's malpractice even though the underlying action may not have been finally resolved.").

Plaintiffs argue that 28 U.S.C. § 1367(d) tolled the statute of limitations because they filed their initial claim against Ms. Johnson in a prior federal lawsuit. Relying on §1367(d), plaintiffs claim the statute of limitations on their state law claims was tolled until 30 days after the 2016 lawsuit terminated because the court declined to exercise supplemental jurisdiction over their state law claims. But plaintiffs misapprehend and misapply § 1367(d). Section 1367(d) operates as a savings statute for re-filing a case in *state* court. It does not "act as a savings statute, allowing a plaintiff to refile in <u>federal court</u>." *Vincent v. Money Store*, 915 F. Supp. 2d 553, 560 (S.D.N.Y. 2013) (quoting *Parrish v. HBO & Co.*, 85 F. Supp. 2d 792, 795–96 (S.D. Ohio 1999)). Thus, § 1367(d) cannot save plaintiffs' state law claims against Ms. Johnson.

In short, the statute of limitations bars plaintiffs' state law claims against Ms. Johnson for false light (Count 4), public disclosure of private facts (Count 5), slander (Count 6), and negligence/legal malpractice (Count 7).

### iii.  Plaintiffs' Complaint fails to allege plausible claims under the KTCA.

Defendants Carla Swartz, Julia Goggins, Pathways, and CASA[13] assert that plaintiffs' Complaint fails to state a plausible claim for relief under the KTCA.[14] To survive a Rule

---

[13]    In their response to CASA's Motion to Dismiss, plaintiffs purport to dismiss their claims against CASA "without prejudice." Doc. 100 at 1. CASA opposes this request to the extent its dismissal is without prejudice. Doc. 110 at 2–5.

[14]    CASA also expresses confusion about whether it is even subject to any of the state law claims asserted by plaintiffs. Doc. 78 at 3–4. Plaintiffs' Complaint alleges claims of false light (Count 4) and public disclosure of private facts (Count 5) against "all individual Defendants." Doc. 1 at 66–68.

12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Although the court must assume the Complaint's factual allegations are true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Carter*, 667 F. Supp.2d at 1263 (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). And, a complaint that fails to isolate the nature of the claims against individual defendants does not give adequate notice to defendants of the acts the complaint alleges they have committed. *Robbins*, 519 F.3d at 1250 (citing *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001)).

*First*, plaintiffs' Complaint here fails to allege a plausible state law claim against CASA. Plaintiffs' Complaint alleges claims of false light and public disclosure of private facts against CASA. Doc. 1 at 66–68. To establish liability for false light, the Complaint must allege facts to show (1) publication to a third party; (2) that falsely represented plaintiffs; (3) and was "highly offensive to a reasonable person." *Dominguez v. Davidson*, 974 P.2d 112, 121 (Kan. 1999). To state a claim of public disclosure of private facts, the Complaint must allege public publication of facts that are (1) "highly offensive to a reasonable person"; (2) private; and (3) "not of legitimate concern to others." *Showler v. Harper's Magazine Foundation*, 222 F. App'x 755, 764 (10th Cir. 2007).

---

Plaintiffs never define the term "individual Defendants." Liberally construing the Complaint, the court construes the term "individual Defendants" to mean all defendants named in the case, including CASA. The court thus construes plaintiffs' Complaint to assert claims of false light (Count 4) and public disclosure of private facts (Count 5) against CASA (but no other state law claims against it).

The Complaint simply makes conclusory and generalized assertions against "all Individual Defendants" and "the individual Respondents" without ever identifying the particular behavior attributed to each defendant. *See*, *e.g.*, Doc. 1 at ¶¶ 162, 167.  This is insufficient to place CASA on notice of the wrongful acts it allegedly committed.  *See Robbins*, 519 F.3d at 1250.  Also, the Complaint alleges few facts about CASA.  It asserts only that it failed to introduce evidence about emotional abuse allegations being unsubstantiated, did not attempt to accommodate plaintiffs' religious faith, and "wrote [reports] which were untrue and slanderous." Doc. 1 ¶¶ 63, 73, 75.  Bare-boned allegations like this will not support a plausible claim for false light or public disclosure of private facts.  *Bixler*, 596 F.3d at 756 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief (internal quotations omitted)).  Thus, because the Complaint fails to place CASA on notice of the wrongful act it allegedly committed, the court dismisses plaintiffs' state law claims (Counts 4 and 5) against CASA.

*Second*, plaintiffs' Complaint fails to state a plausible negligence claim (Count 7) against Pathways,[15] Ms. Swartz, and Ms. Goggins.  To establish liability for negligence, plaintiffs' Complaint must assert:  "(1) the defendant owed a duty to the plaintiffs; (2) that duty was breached; (3) the breach was the proximate cause of the plaintiffs' injury; and (4) the plaintiffs suffered damages."  *Kirk v. City of Shawnee*, 10 P.3d 27, 30 (Kan. Ct. App. 2000).  Plaintiffs' Complaint fails to allege any fact capable of supporting a finding in their favor on any of the elements of a negligence claim against Pathways.  Indeed, plaintiffs' Complaint rarely mentions Pathways and notes only the "limited nature of their involvement."  Doc. 1 ¶ 32.  Thus, the court

---

[15]      Negligence is the only state law claim that plaintiffs assert against Pathways.

dismisses plaintiffs' negligence claim (Count 7) against defendant Pathways because they have failed to state a claim.

Plaintiffs' Complaint also fails to allege any facts capable of supporting a finding that Ms. Swartz or Ms. Goggins owed a duty to plaintiffs beyond the duty owed to the public at large. This finding is essential to a negligence claim against a public agency. *See Kirk*, 10 P.3d at 30 ("[T]he fact the governmental entity owes a duty to the public at large does not establish a basis for an individual to claim the agency owed a legal duty to him or her personally.") (citing *Jarboe v. Bd of Sedgwick Cty. Comm'rs*, 938 P.2d 1293 (Kan. 1997)). Thus, plaintiffs' Complaint fails to state a claim for negligence against Ms. Swartz and Ms. Goggins. The court dismisses plaintiffs' negligence claim (Count 7) against Ms. Swartz and Ms. Goggins.

In summary, for the reasons identified, the court dismisses plaintiffs' state law claims against Barry Wilkerson, Bethany Fields, Carla Swartz, Julia Goggins, Miranda Johnson, Pathways, and CASA.

### d. Plaintiffs dismissed claims against RCPD.

Defendant RCPD asserts plaintiffs never have served it with process. Plaintiffs do not dispute this proposition, instead purporting to withdraw their claims against RCPD. Doc. 101 at 2–3. Defendant RCPD does not object to their dismissal by plaintiffs. Doc. 109. Thus, the court dismisses plaintiffs' state law claims against defendant RCPD for this independent reason.

## III.   Conclusion

In sum, the court dismisses the following claims for several reasons:

- All claims against defendants Kris Kobach, Scott Schwab, Rhonda Eisenbarger, Deja Jackson, Randy Debenham, and Blake Robinson are dismissed without prejudice based on plaintiffs' voluntary dismissal.

- Eleventh Amendment immunity bars all of plaintiffs' claims against KDCF and Gina Meier-Hummel, Theresa Freed, Kendra Baker, Angie Suther, and Kim Yoxell in their official capacities.

- Claim preclusion bars plaintiffs' federal claims (Counts 1 and 2) against Miranda Johnson, Barry Wilkerson, Bethany Fields, Carla Swartz, RCPD, and Pathways.

- To the extent the Eleventh Amendment or claim preclusion do not bar plaintiffs' claims for money damages, the Complaint fails to state plausible §§ 1983 and 1985 claims for relief against these defendants moving for dismissal for the following reasons:

  - Barry Wilkerson and Bethany Fields enjoy prosecutorial immunity.

  - Carla Swartz and Julia Goggins are entitled to qualified immunity.

  - Lora Ingles is immune from suit for her actions taken as a guardian ad litem.

  - Riley County Police Department is not a legal entity subject to suit.

  - Plaintiffs' Complaint asserts no plausible § 1983 claims against defendants KVC, Pathways, PMHS, St. Francis, Kathy Boyd, Laura Price, Kaylee Posson, Miranda Johnson, and CASA because the Complaint fails to allege facts sufficient to subject these defendants to § 1983 liability as state actors.

- Plaintiffs' Complaint asserts no plausible § 1985 claim against any defendant.

For these reasons, the court dismisses plaintiffs' §§ 1983 and 1985 claims against the following defendants:  KDCF, Gina Meier-Hummel, Theresa Freed, Kendra Baker, Angie Suther, and Kim Yoxell in their official capacities; Barry Wilkerson, Bethany Fields, Carla Swartz, Julia Goggins, Miranda Johnson, and Lora Ingles in their individual and official capacities; Pathways, RCPD, KVC, PMHS, St. Francis, Kathy Boyd, Laura Price, Kaylee Posson, and CASA.

The court cannot take up the issue of supplemental jurisdiction over the remaining state law claims because federal claims remain against defendants Anthony Allison, Michelle Allison, Amanda Allison-Ballard and Does 1–10.  But, the court dismisses plaintiffs' state law claims against the following defendants for the following reasons:

- Barry Wilkerson and Bethany Fields enjoy prosecutorial immunity.
- Carla Swartz and Julia Goggins are entitled to police protection immunity and qualified immunity.
- Plaintiffs' claims against Miranda Johnson are barred by the statute of limitations.
- Plaintiffs' Complaint fails to state a claim of negligence against Carla Swartz and Julia Goggins.
- Plaintiffs' Complaint fails to state a claim against Pathways and CASA.

After these dismissals, the following claims against the following defendants remain in the case:  (1) §§ 1983 and 1985 claims (Counts 1 and 2) remain against Anthony Allison, Michelle Allison, Amanda Allison-Ballard, Does 1–10, and Phyllis Gilmore, Kendra Baker, Theresa Freed, Angie Suther, and Kim Yoxell in their individual capacities; (2) state law claims of false light (Count 4), public disclosure of private facts (Count 5), and slander (Count 6) remain against Kathy Boyd, Laura Price, Kaylee Posson, Lora Ingles, KVC, PMHS, St. Francis, Anthony Allison, Michelle Allison, Amanda Allison-Ballard, Does 1–10, and Phyllis Gilmore, Kendra Baker, Theresa Freed, Angie Suther, and Kim Yoxell in their individual capacities; and (3) negligence claims (Count 7) remain against KVC, St. Francis, Price, PMHS, and Does 1–10.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs Raymond and Amelia Schwab's "Joint Motion to Withdraw" (Doc. 102) is granted.  The Clerk of the Court is directed to terminate Kris Kobach, Rhonda Eisenbarger, Deja Jackson, Randy Debenham, and Blake Robinson as defendants.

**IT IS FURTHER ORDERED THAT** defendants Randy Debenham and Blake Robinson's Motion to Dismiss (Doc. 59) and defendant Kobach's Motion to Dismiss (Doc. 64) are denied as moot.

**IT IS FURTHER ORDERED THAT** the Motions to Dismiss filed by Barry Wilkerson, Bethany Fields, Carla Swartz, Julia Goggins, the Riley County Police Department, and Pathways Family Services, LLC (Doc. 62); the Kansas Department for Children and Families, Theresa Freed, Gina Meier-Hummel, Kendra Baker, Angie Suther, and Kim Yoxell (Doc. 54); Miranda Johnson (Doc. 75); and Sunflower CASA Project, Inc. (Doc. 77) are granted.

**IT IS FURTHER ORDERED THAT** the Motions to Dismiss filed by St. Francis Community Services, Inc. (Doc. 45); Kathy Boyd, Laura Price, and Kaylee Posson (Doc. 81);

Lora Ingels (Doc. 56); KVC Behavioral Healthcare, Inc. (Doc. 50); and Pawnee Mental Health Services, Inc. (Doc. 52) are granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** plaintiffs must serve process on defendants Phyllis Gilmore, Theresa Freed, Kendra Baker, Angie Suther, and Kim Yoxell in their individual capacities in accordance with the Federal Rules of Civil Procedure (or the Kansas Rules of Civil Procedure) **by October 25, 2019**.

**IT IS FURTHER ORDERED THAT** plaintiffs' Joint Request for Judicial Notice that All Required Pleadings and Responses Have Been Entered and a Request to Rule on Motions or Set Hearing Date to Hear and Rule on Motions (Doc. 121) is denied as moot.

**IT IS SO ORDERED.**

**Dated this 25th day of September, 2019, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**