## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**RAYMOND R. SCHWAB AND**
**AMELIA D. SCHWAB,**

     **Plaintiffs,**

**v.**

                                                  **Case No. 18-2488-DDC-GEB**

**LORA INGELS, et al.**,

     **Defendants.**

## MEMORANDUM AND ORDER

On October 8, 2019, defendants Anthony and Michelle Allison filed a Motion to Dismiss (Doc. 134). In response, pro se plaintiffs[1] Raymond and Amelia Schwab filed a Joint Opposed Motion Requesting Leave of the Court to Amend Complaint (Doc. 145) contending amendment would cure the deficiencies identified in defendants' motion. Defendants St. Francis Community Services ("St. Francis"), Kathy Boyd, Laura Price, Kaylee Posson, KVC Behavioral Healthcare, Inc. ("KVC"), Pawnee Mental Health Services, Inc. ("PMHS"), Lora Ingels, Anthony Allison and Michelle Allison oppose plaintiffs' Motion to Amend (Doc. 147). Plaintiffs have filed a Reply (Doc. 151). For reasons explained below, the court denies plaintiffs' Motion to Amend (Doc. 145). The court also grants defendants Anthony and Michelle Allison's Motion to Dismiss

---

[1]     Because plaintiffs proceed pro se, the court construes their filings liberally and holds them to "a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[I]f the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."). But the court does not become an advocate for the pro se parties. *Id.* Likewise, plaintiffs' pro se status does not excuse them from complying with the court's rule or facing the consequences of noncompliance. *See Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

(Doc. 134).[2]  And, having dismissed all of plaintiffs' federal claims, the court declines to exercise supplemental jurisdiction over plaintiffs' state law claims and dismisses the case.

## I.  Background

This case has a long and interesting history.  As relevant to the court's decisions in this Order, plaintiffs filed their Complaint on August 27, 2018, naming more than 30 defendants (Doc. 1).[3]  The Complaint asserts three claims under 42 U.S.C. §§ 1983 and 1985, and five claims under the Kansas Tort Claims Act for injuries allegedly incurred during child in need of care ("CINC") proceedings in Kansas.  Their Compliant is 84-pages long, containing factual and legal conclusions virtually identical to those asserted in an earlier 2016 lawsuit filed in this court. There are some differences, however.  For example, the 2016 Complaint did not name Anthony or Michelle Allison as defendants.  The court dismissed that 2016 case in 2017.  *Schwab v. Kansas*, No. 16-CV-4033-DDC-KGS, 2017 WL 2831508 (D. Kan. June 30, 2017).  Plaintiffs appealed but the Tenth Circuit dismissed the appeal because plaintiffs failed to prosecute it. *Schwab v. Gilmore*, No. 17-3160, 2017 WL 7048962 (10th Cir. Nov. 21, 2017).

On September 25, 2019, after months of litigation, the court ruled plaintiffs' Joint Motion to Withdraw and 11 motions to dismiss filed by 24 of the defendants in the case.  Doc. 129.  That Order dismissed 19 defendants entirely and dismissed the federal claims against five other defendants.  But federal and state claims remained against defendants Anthony and Michelle

---

[2]      Plaintiffs responded to the motion dismiss in just one fashion:  their motion seeking leave to amend.  The time for filing an actual response to the motion to dismiss has expired.  *See* D. Kan. Rule 6.1(d)(2) ("Reponses to motions to dismiss . . . must be served within 21 days.").

[3]      In the present lawsuit, the court where plaintiffs initially sued—the District of Colorado— identified deficiencies in plaintiffs' Complaint and plaintiffs supplemented their Complaint with the court's required form.  Doc. 7.  The District of Colorado then transferred the case to our court.

Allison,[4] Amanda Allison Ballard, Phyllis Gilmore, Theresa Freed, Kendra Baker, Angie Suther, and Kim Yoxell in their individual capacities, and Does 1–10.

Since plaintiffs still had not yet served defendants Phyllis Gilmore, Theresa Freed, Kendra Baker, Angie Suther, and Kim Yoxell in their individual capacities, the court gave plaintiffs until October 25, 2019, to effect service under Fed. R. Civ. P. 4. On October 7, 2019, plaintiffs moved to compel certain defendants to release the personal addresses of the unserved defendants so plaintiffs could effect service (Doc. 132). The court denied this motion, Doc. 144, and plaintiffs failed to serve these defendants by the court's deadline. So, the court dismissed defendants Phyllis Gilmore, Theresa Freed, Kendra Baker, Angie Suther, and Kim Yoxell for failure to prosecute on April 1, 2020. Doc. 160. Plaintiffs also moved to dismiss defendant Amanda Allison Ballard voluntarily (Doc. 133), which the court granted (Doc. 143).

After these various dismissal Orders, the following claims against the following defendants remain in the case: (1) §§ 1983 and 1985 claims (Counts 1 and 2) against Anthony Allison, Michelle Allison, and Does 1–10; (2) state law claims for false light (Count 4), public disclosure of private facts (Count 5), and slander (Count 6) against Kathy Boyd, Laura Price, Kaylee Posson, Lora Ingles, KVC, PMHS, St. Francis, Anthony Allison, Michelle Allison, and Does 1–10; and (3) negligence claims (Count 7) against KVC, St. Francis, Price, PMHS, and Does 1–10.

On October 8, 2019, defendants Anthony and Michelle Allison moved to dismiss the claims asserted against them, asserting they failed to state a claim on which relief can be granted under Fed. R. Civ. P. 12(b)(6) (Doc. 134). In response, plaintiffs moved to amend their

---

[4]     Anthony and Michelle Allison filed a Motion to Quash (Doc. 105), which the court denied. Doc. 124. But the court granted plaintiffs 30 additional days to serve the Allisons. Plaintiffs served the Allisons on September 25, 2019. Doc. 130; Doc. 131.

Complaint on October 28, 2019.  The proposed amendment purportedly seeks to remedy defects the court identified in its September 25, 2019 Order (Doc. 145) and Anthony and Michelle Allison's Motion to Dismiss.  Defendants St. Francis, Kathy Boyd, Laura Price, Kaylee Posson, KVC, Inc., PMHS, Lora Ingels, and Anthony and Michelle Allison oppose plaintiffs' Motion to Amend, arguing it is untimely, unduly delayed, and futile.

Plaintiffs also filed a Motion for Relief from Judgment or Reconsideration of Ruling (Doc. 146), but they later withdrew it (Doc. 154; Doc. 155).  So, that motion is moot.

Below, the court begins with the parties' arguments about whether the court should grant leave to amend.  And, because the court concludes the putative amendment is untimely and unduly delayed, the court next addresses Anthony and Michelle Allison's Motion to Dismiss.

## II.     Legal Standard

### A.  Motion to Amend

Federal Rule of Civil Procedure 15(a)(1) permits a party to amend its pleadings once as a matter of course in one of two ways:  (A) first, within 21 days after serving the pleading, or (B) second, within 21 days of service of a responsive pleading.  Fed. R. Civ. P. 15(a)(1)(A)–(B).  Outside those periods, any amendment to the pleadings requires the opposing party's written consent or the court's leave, and a court should "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  In contrast, a court should refuse to grant leave to amend on "'a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.'"  *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

The decision whether to grant leave to amend is committed to the court's sound discretion. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)). When exercising this discretion, "the court must be mindful that the Federal Rules of Civil Procedure are designed to facilitate decisions on the merits rather than on pleading technicalities." *Bank Midwest, N.A. v. Millard*, No. 10-2387-JAR-DJW, 2012 WL 4006423, at *1 (D. Kan. Sept. 12, 2012) (citing *Koch v. Koch Indus.*, 127 F.R.D. 206, 209 (D. Kan. 1989)). Also, the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. As this court and other federal courts have explained time and again, "[t]his discretionary approach of the federal rules fosters a full adjudication of the merits of the parties' disputes within a single comprehensive proceeding." *First Savings Bank, F.S.B. v. U.S. Bancorp*, 184 F.R.D. 363, 368 (D. Kan. 1998) (quoting *Katzman v. Sessions*, 156 F.R.D. 35, 38 (E.D.N.Y. 1994)). The purpose of Rule 15 is to "promote as complete an adjudication of the dispute between the parties as is possible." *Id.* (quoting *LaSalvia v. United Dairymen of Ariz.*, 804 F.2d 1113, 1119 (9th Cir. 1986)).

**B. Motion to Dismiss**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Under this standard, 'the complaint must give the court

reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'"  *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

Although the court must assume that the complaint's factual allegations are true, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* at 1263 (quoting *Iqbal*, 556 U.S. at 678).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief.  *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court may consider "not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference."  *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted).  A court also "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Id.* (quoting *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)).

## III.   Analysis

The court, in subpart A, below, first considers plaintiffs' Motion to Amend.  Concluding that plaintiffs' Motion to Amend is untimely and unduly delayed, the court, in subpart B, next considers Anthony and Michelle Allison's Motion to Dismiss.  Also, subpart B considers plaintiffs' federal claims against Does 1–10.  Finally, the court, on its own motion, considers whether it should exercise supplemental jurisdiction over plaintiffs' remaining state law claims.  Concluding that the guidance from the Circuit counsels against invoking its supplemental jurisdiction, the court dismisses the case.

### A.  Motion to Amend

Plaintiffs raise two arguments to support their Motion to Amend.  First, plaintiffs contend, they can amend their Complaint as a matter of course under Rule 15(a)(1) because they sought permission within 21 days of the Allisons' Motion to Dismiss.  Second, and alternatively, plaintiffs assert the court should grant them leave to amend under Rule 15(a)(2).  The court addresses each argument, in turn, below.

### 1.  May plaintiffs amend their Complaint as a matter of course under Rule 15(a)(1)?

Plaintiffs assert Rule 15(a)(1) governs their Motion to Amend because it was filed in response to a motion to dismiss under Rule 12(b)(6).  Doc. 145 at 2–3.  They argue, "Just because it took [defendants] 14 months to file a motion to dismiss under Rule 12 does not automatically waive the plaintiffs['] rights to amend."  Doc. 151 at 2.

While it is accurate that plaintiffs filed their motion within 21 days of defendants' Motion to Dismiss, plaintiffs misunderstand Rule 15(a)(1).  Rule 15(a)(1) permits a party to amend a pleading "once as a matter of course" within 21 days after it is served or, "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b) . . . *whichever is earlier*."  Fed. R. Civ. P. 15(a)(1)(A)–(B) (emphasis added).  The comments to the 2009 Amendment to the Rule provide: "The 21-day periods to amend once as a matter of course after service of a responsive pleading or after service of a designated motion are not cumulative.  If a responsive pleading is served after one of the designated motions is served, for example, there is no new 21-day period."  Fed. R. Civ. P. 15 advisory committee's note to 2009 amendment; *see also Trujillo v. City of Newton, Kan.*, No. 12-2380-JAR-DJW, 2013 WL 535747, at *1 (D. Kan. Feb. 12, 2013) (holding that the "plain language of [Rule 15]" and the advisory committee comments "make clear that the

'whichever is earlier' language . . . is not intended to be cumulative" and denying plaintiff's

motion to amend as a matter of right).[5]

Here, plaintiffs filed their Complaint on August 27, 2018.  Doc. 1.  Defendant KVC filed

the first motion to dismiss on December 27, 2018.  Doc. 50.  In all, there were 11 motions to

dismiss, which the court ruled on September 25, 2019.  Doc. 129.  Plaintiffs had not yet properly

served the Allisons when the court ruled these motions.  *See* Doc. 124 at 4 (explaining the

allowable methods for service under the federal rules and Kansas law and directing plaintiffs to

serve the Allisons no later than September 27, 2019).  Plaintiffs served the Allisons on

September 25, 2019.  Plaintiffs are not entitled to amend their Complaint "as a matter of course"

under Rule 15(a)(1) because they finally had served the last set of defendants in this case.  6

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1480 (3d ed. 2019)

("The different 21-day periods for amendments as of right are not cumulative" so "if a

responsive pleading[] is served after one of the designated motions is served, [for example] there

is no new 21-day period." (internal quotation marks omitted) (citing Fed. R. Civ. P. 15 advisory

---

[5]        The court acknowledges the split of authority on Rule 15(a)(1)'s application to multi-defendant cases.  For example, the District Court for the District of Columbia has held that Rule 15(a)(1) would allow a plaintiff to amend as a matter of course for only those defendants who had not filed a Rule 12(b) motion or an answer outside the 21-day period.  *Villery v. D.C.*, 277 F.R.D. 218, 219 (D.D.C. 2011).  Other courts also apply Rule 15 this way.  *See, e.g.*, *Isaacs v. Trs. of Dartmouth Coll.*, No. 17-cv-40-LM, 2017 WL 2881130, at *1 (D.N.H. July 6, 2017) ("[E]ach defendant is treated separately under Rule 15 for purposes of amending as of right." (citation and internal quotation marks omitted)) (collecting cases).  It appears the Fifth and Eleventh Circuits follow this interpretation.  *See Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1292 (11th Cir. 2007) (applying previous version of Rule 15(a)); *Barksdale v. King*, 699 F.2d 744, 746–47 (5th Cir. 1983) (same); *but see Seeberger v. Goodman*, No. 2:14-cv-1063-GBW-WPL, 2015 WL 13662654, at *1 (D.N.M. Apr. 3, 2015) (noting *Trujillo* and observing that "the more common approach is that the 21 day timeframe [in Rule 15(a)(1)] applies to each defendant independently," and declining to select one approach over the other).  Absent contrary guidance from the Tenth Circuit, the court chooses to follow Chief Judge Robinson's interpretation in *Trujillo*.  The court believes this interpretation best will secure "the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.  And, *Trujillo* comports with the advisory committee's comment to the 2009 amendment to Rule 15 and, as noted above, applies the view endorsed by a leading treatise on federal civil procedure.

committee's note to 2009 amendment)).  In sum, consistent with these principles, and Judge

Robinson's ruling in *Trujillo*, the court denies plaintiffs' request to amend under Rule 15(a)(1).

### 2. May plaintiffs amend their Complaint with leave of the court under Rule 15(a)(2)?

Plaintiffs alternatively seek the court's permission to amend their Complaint under Rule

15(a)(2) because "[a]ll [defendants] oppose the proposed amendment to the Complaint."  Doc.

145 at 1.  Plaintiffs contend justice favors amendment because their proposed amendments will

not unduly prejudice defendants.  *Id.* at 3.  Defendants argue the court should deny plaintiffs'

Motion to Amend because it is untimely and unduly delayed.  The court considers these

arguments, below.

Plaintiffs filed their Motion to Amend more than 14 months after their initial Complaint.

*Compare* Doc. 145 (filed Oct. 28, 2019) *with* Doc. 1 (filed Aug. 27, 2018).  Plaintiffs assert the

proposed Amended Complaint "does not involve the addition of any new defendants, set forth

any new claims, or raise any new legal theories as they only add information and expand the

activities covered under those claims."  Doc. 145 at 3.  Also, plaintiffs have "added specific

names to the claims and damages as opposed to keeping the term RESPONDENT as a generic

identifier to all the defendants" and have "add[ed] more detail concerning the existing claims . . .

to cure deficiencies pointed out in the [c]ourt[']s [September 25, 2019 Order]."  *Id.*

The court can deny leave to amend when the movant does not have an adequate

explanation for undue delay.  *Minter*, 451 F.3d at 1206.  If the movant knew for some time about

the facts which he seeks to plead in the putative amendment, the court may deny his request to

amend.  *Id.* at 1205–06.  The longer a plaintiff delays, the more likely it is a court will deny

leave.  *Id.* at 1205; *see also Steinert v. The Winn Group, Inc.*, 190 F.R.D. 680, 684 (D. Kan.

2000) ("Untimeliness in itself can be a sufficient reason to deny leave to amend, particularly

when the movant provides no adequate explanation for the delay." (quoting *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1495 (10th Cir. 1995)).  Here, plaintiffs' motion is untimely and unduly delayed.

Plaintiffs fail to explain their delay in moving to amend.  Plaintiffs purport to add information about their claims to remedy defects in their Complaint.  But plaintiffs never explain their delay.  They merely assert that they had not discussed certain details of the case with their children until now.[6]  Doc. 145 at 6.  Plaintiffs do not explain why they postponed discussing their case with their children until after the case had been pending for more than a year and the court already had ruled 11 motions.

Nor do plaintiffs explain why they have waited until now to remedy other defects in their Complaint.  Defendants identified myriad defects in plaintiffs' Complaint, but plaintiffs took steps to amend only after the court had ruled.  For example, at least one defendant argued some of plaintiffs' claims were barred by the applicable statute of limitations.  *See* Doc. 76 at 16.  But plaintiffs waited until after the court had ruled on this argument to move to amend their Complaint to add more information designed to remedy this defect.  Doc. 151 at 5–6 (explaining that plaintiffs added arguments demonstrating that the statute of limitations did not begin to run until 2018 to remedy defects "pointed out by [defendants'] counsel in their motions to dismiss"); *see also Kader v. Sarepta Therapeutics, Inc.*, 887 F.3d 48, 61 (1st Cir. 2018) (condemning a "wait and see approach" where a plaintiff "having the needed information, deliberately wait[s] in

---

[6]        Plaintiffs' claims arise out of Child in Need of Care proceedings in Kansas.  Plaintiffs bring claims under 42 U.S.C. §§ 1983 and 1985 against defendants for "Fourteenth Amendment Familial Association," "Warrantless Seizure of Children," and "violation of 4th Amendment illegal search and seizure of body fluids."  Doc. 1 at 55, 60.  Plaintiffs also bring various state law claims including false light, public disclosure of private facts, slander, negligence/malpractice, and malicious prosecution.  *Id.* at 66, 68, 70, 73.

the wings" until the court issues a ruling on the first complaint (citation and internal quotation marks omitted)).

Exercising its discretion, the court denies plaintiffs' motion under Rule 15(a)(2). "[D]enial of leave to amend is appropriate 'when the party filing the motion has no adequate explanation for the delay.'" *Minter*, 451 F.3d at 1206 (quoting *Frank*, 3 F.3d at 1365–66); *see also Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987) (noting that "[c]ourts have denied leave to amend where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend"); *Waddell & Reed Fin., Inc. v Torchmark Corp.*, 223 F.R.D. 566, (D. Kan. 2004) ("Untimeliness alone is a sufficient reason to deny leave to amend, . . . especially when the party filing the motion has no adequate explanation for the delay."). Plaintiffs fail to explain their significant delay in moving to amend their Complaint, or why they could not have added these additional facts by an earlier amendment. So, the court denies plaintiffs' Motion to Amend because their undue and unexplained delay renders their motion untimely.[7] *See Bylin*, 568 F.3d at 1229 (explaining a court should refuse to grant leave to amend when there is undue delay); *Steinert*, 190 F.R.D. at 684 (noting plaintiff's motion to amend was untimely when the case had "been on file for more than one full year" and he "knew or should have known" of the facts he sought to include in his proposed amended complaint).

### B. Motion to Dismiss

Defendants Anthony and Michelle Allison filed a Motion to Dismiss (Doc. 134) on October 8, 2019. Plaintiffs, in lieu of a response, moved for leave to amend their Complaint

---

[7]     Defendants also argued plaintiffs' proposed amendments would be futile. Doc. 147 at 5–7. Because the court concludes justice does not require amendment because of plaintiffs' undue delay in moving to amend, the court does not reach the additional arguments against amendment.

(Doc. 145) on October 28, 2019.  D. Kan. Rule 6.1(d)(2) provides that, unless otherwise ordered by the court, responses to a dispositive motion are due within 21 days.  Here, plaintiffs' deadline to respond to the Allisons' motion—October 29, 2019—expired long ago, and the court has granted no extension.  To date plaintiffs never have responded to this motion.  Nevertheless, the court considers the Allisons' motion, below.  The court also considers plaintiffs' federal claims against Does 1–10.  *Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1190–91 (10th Cir. 2014) (affirming district court's sua sponte dismissal under Rule 12(b)(6) of certain defendants because it was "'obvious that the plaintiff cannot prevail on the facts [s]he has alleged'").

The court first summarizes the Complaint's allegations against Anthony and Michelle Allison and Does 1–10.  Then, the court considers whether the Complaint has stated plausible federal claims against these defendants.  For reasons explained below, the court concludes plaintiffs have failed to state either a § 1983 or § 1985 claim against the Allisons or Does 1–10.  And, since the court dismisses plaintiffs' remaining federal claims, it declines to exercise supplemental jurisdiction over the state law claims against these and other defendants.  18 U.S.C. § 1367(c)(3).  The court thus dismisses plaintiffs' case.

### 1.  Facts

When considering a motion to dismiss, the court accepts facts asserted by the Complaint as true and views them in the light most favorable to plaintiffs.  *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (citing *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).

The court already has described the facts in plaintiffs' Complaint in its September 25, 2019 Memorandum and Order.  Doc. 129 at 9–12.  For purposes of the analysis expressed in this Order, the court highlights the Complaint's allegations again the Allisons and Does 1–10.

Mr. and Mrs.[8] Schwab are the natural parents of four children.  Mrs. Schwab is the

mother of a fifth child, and Mr. Schwab is his stepfather.  Anthony Allison is the Schwabs'

maternal uncle; Michelle Allison is his spouse.  In April 2015, Mr. and Mrs. Schwab allowed

their five children to stay with their maternal grandmother in Dickinson County, Kansas.

Plaintiffs contend the Allisons hid the Schwab children and conspired with others to "unlawfully

deprive the [Schwabs] of their parental control and custody."  Doc. 1 at 18 (Compl. ¶ 43).

Without the Schwabs knowing it, the maternal grandmother and the Allisons contacted the Riley

County Police Department—RCPD—to express concerns about how Mr. and Mrs. Schwab were

caring for their children.  The RCPD removed the children from their parents' custody.  The

State of Kansas, then initiated proceedings in the District Court of Riley County Kansas to

determine if the Schwab children were Children In Need of Care—CINC—under Kansas law.

*See* Kan. Stat. Ann. § 38-2202(d) (providing the statutory definition for a "child in need of

care").

Plaintiffs allege the Allisons conspired with other defendants "to deprive the Schwab[]s

of lawful custody of their children without warrant, due process, investigation, or evidence."

Doc. 1 at 20 (Compl. ¶ 45).  The Allisons transported the Schwab children to receive medical

care at various times before July 27, 2015.  Plaintiffs contend the Allisons told teachers and

medical professionals that Mrs. Schwab "used meth while pregnant" with one of her children and

that plaintiffs abandoned their children while "on a drug binge."  *Id.* at 23 (Compl. ¶ 53).  The

Complaint also alleges the Allisons failed to accommodate plaintiffs' religious practices with the

children.  *Id.* at 30–31, 45 (Compl. ¶¶ 73, 106).  Finally, plaintiffs assert, the Allisons "caused

immense stress on the children by telling them they would never go home, that the [Schwabs]

---

[8]     The court refers to plaintiffs in this fashion because it replicates the way plaintiffs referred to
themselves in their papers. *See, e.g.*, Doc. 1 at 15 (Compl. ¶ 38).

were non compliant and the children would never see their parent[]s again." *Id.* at 54 (Compl. ¶ 129).

Plaintiffs identify "Does 1-10" as individuals who "raised a $100.00 MUNICIPAL bond to 5000.00" when Mr. Schwab was arrested, withheld information from Mrs. Schwab, billed him for unwanted medical treatment, and threatened to "place [Mr. Schwab] in a psychiatric ward if he did not break his hunger strike." Doc. 1 at 39. In its September 2019 Order, the court warned plaintiffs that plaintiffs initially may bring claims against unknown defendants as "John Doe," but permission to sue unnamed defendants does not last forever. "The Federal Rules of Civil Procedure [do] not permit such actions against unnamed defendants following a suitable length of time for the plaintiff to identify the John Does." *Culp v. Williams*, 456 F. App'x 718, 720 (10th Cir. 2012). The court cannot discern whether plaintiffs have made efforts to identify "Does 1-10."[9]

Plaintiffs bring (1) §§ 1983 and 1985 claims (Counts 1 and 2) against Anthony and Michelle Allison, and Does 1–10; (2) state law claims of false light (Count 4), public disclosure of private facts (Count 5), and slander (Count 6) against Anthony Allison, Michelle Allison, and Does 1–10; and (3) negligence claims (Count 7) against Does 1–10.

### 2.   Rule 12(b)(6) Analysis

The Allisons divide their arguments into two groups. First, the Allisons assert plaintiffs' federal claims "fail as a matter of law" because they are not state actors and the Complaint fails to allege that they conspired with state actors. Doc. 135 at 6. The court also applies a state actor analysis to the claims against Does 1–10. Second, the Allisons contend the court should dismiss plaintiffs' state law claims because they fail to state a claim, or the applicable statute of

---

[9]      Notably, even the proposed Amended Complaint makes no attempt to identify Does 1–10. *See* Doc. 145-1 at 9 ("Plaintiffs are ignorant of the true names and capacities of Does 1–10.").

limitations bars plaintiffs from asserting them. *Id.* at 9. The court addresses each group of arguments in turn, below.

### a. Federal Claims against the Allisons

Defendants first argue that plaintiffs' Complaint fails to allege state action—or conspiracy with state actors—sufficient to subject them, as private parties, to liability under § 1983. Next, the Allisons assert the Complaint's § 1985 claims fail because it never alleges discriminatory animus. The court addresses these two arguments in parts i and ii.

### i.  The Complaint's § 1983 claims against the Allisons

Plaintiffs bring § 1983 claims against the Allisons. As the court explained in its September 2019 Order (Doc. 129 at 24), to state a claim under § 1983, a plaintiff must allege that: (1) "some person has deprived him [or her] of a federal right"; and (2) "the person who has deprived him [or her] of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citations omitted). When asserting a § 1983 claim against a private individual, a plaintiff must allege sufficient facts plausibly demonstrating that the private individual's conduct allegedly causing a constitutional deprivation is "fairly attributable to the state." *Scott v. Hern*, 216 F.3d 897, 906 (10th Cir. 2000) (citations and internal quotation marks omitted).

The Tenth Circuit has applied four distinct tests to determine if a private person or entity is subject to liability under § 1983 as a state actor: the nexus test, the symbiotic relationship test, the joint action test, and the public function test. *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995). The *nexus test* requires a "sufficiently close nexus between the government and the challenged conduct" and, in most cases, renders a state liable for a private individual's conduct "only when [the State] has exercised coercive power or has provided

such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id.* at 1448 (citations and internal quotation marks omitted). The *symbiotic relationship test* asks whether the state "has so far insinuated itself into a position of interdependence with a private party that [the private party] must be recognized as a joint participant in the challenged activity." *Id.* at 1451 (citations and internal quotation marks omitted). The *joint action test* requires courts to "examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Id.* at 1453 (citations omitted). Finally, the *public function test* asks whether the challenged action is "a function traditionally exclusively reserved to the State." *Id.* at 1456 (citations and internal quotation marks omitted).

The Complaint also alleges the Allisons conspired with state actors to deprive plaintiffs of their constitutional rights. "To properly allege a conspiracy under § 1983, a plaintiff must allege specific facts that plausibly show (1) an agreement and concerted action between the defendants and (2) an actual deprivation of constitutional rights." *Turnbough v. Wantland*, 676 F. App'x 811, 814 (10th Cir. 2017) (citing *Shimomura v. Carlson*, 811 F.3d 349, 359 (10th Cir. 2015)). "Conclusory allegations of conspiracy" will not do. *Id.* When "a plaintiff attempts to assert the state action required for a § 1983 claim against private actors based on a conspiracy with government actors, mere conclusory allegations with no supporting factual averments are insufficient." *Peel v. Joint Comm'n, State Survey Okla. Dept. of Health*, 577 F. App'x 757, 759 (10th Cir. 2014).

Here, no matter which test the court applies, plaintiffs' Complaint asserts no facts capable of stating a plausible claim against the Allisons—both private actors—for conduct that was "fairly attributable to the state." *Scott*, 216 F.3d at 906. Nor does the Complaint allege a

conspiracy—aside from "mere conclusory allegations with no supporting facts." *Peel*, 577 F. App'x at 759. The Complaint just makes conclusory allegations that the Allisons have acted under color of state law and acted in concert with or conspired with state actors by removing their children from their custody and denying them their constitutional rights. *See* Doc. 1 at 17, 18, 20, 23, 27, 30, 43, 54, 58 (Compl. ¶¶ 41–43, 45, 65, 73, 106, 129, 138). But conclusions can't carry the day.

The crux of plaintiffs' claim is that the Allisons provided information to the RCPD and, because of that information, RCPD removed plaintiffs' children from their home. But "mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under § 1983 . . . ." *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983). Plaintiffs have pleaded no facts capable of supporting a rational finding that there was a meeting of the minds, the defendants formed an agreement, or that they engaged in a general conspiracy. And, plaintiffs allege no other facts establishing how a factfinder fairly could attribute the conduct of the state of Kansas to the Allisons. Thus, the court dismisses plaintiffs' § 1983 claims against defendants Anthony and Michelle Allison.

### ii. The Complaint's § 1985 claim against the Allisons

Plaintiffs likewise have failed to state a plausible § 1985 claim against the Allisons. To make a plausible § 1985 claim, plaintiffs must allege class-based or racially discriminatory animus. *See Jones v. Norton*, 809 F.3d 564, 578 (10th Cir. 2015) ("Among other elements, [§ 1985(2) and (3)] require a showing of 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971))). Here, plaintiffs never allege either defendant acted with discriminatory animus. They thus have failed to allege an essential requirement of a § 1985

claim.  The court dismisses all of plaintiffs' § 1985 claims against Anthony and Michelle
Allison.

### b.  The Complaint's §§ 1983 and 1985 claims against Does 1–10

For the same reasons discussed above, the court dismisses plaintiffs' federal claims
against Does 1–10.  *See Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1190–91 (10th
Cir. 2014) (affirming district court's sua sponte dismissal under Rule 12(b)(6) of certain
defendants because it was "'patently obvious that the plaintiff cannot prevail on the facts alleged
and allowing [plaintiff] an opportunity to amend [the] complaint would be futile'" (quoting
*McKinney v. Okla Dep't of Human Servs.*, 925 F.2d 363, 365 (10th Cir. 1991)).  Here, the
Complaint asserts both § 1983 and § 1985 claims against Does 1–10.  But the Complaint alleges
few facts about these Does.  Doc. 1 at 39 (Compl. ¶ 90) (alleging Does 1–10 raised Mr.
Schwab's municipal bond amount, took Mr. Schwab to a hospital and later billed him for his
service, and threatened to put him in a psychiatric ward because he was on a hunger strike).
Plaintiffs have pleaded no facts capable of supporting a finding that a meeting of the minds
occurred, defendants formed an agreement, or engaged in a general conspiracy.  Also they allege
no other facts establishing how a factfinder fairly could attribute the conduct of the state of
Kansas to Does 1–10, or that they acted with discriminatory animus.  The court thus dismisses
plaintiffs' § 1983 and § 1985 claims against Does 1–10.[10]

---

[10]      The court also could dismiss plaintiffs' claims against Does 1–10 because the applicable statute
of limitations bars them.  *See Garrett v. Fleming*, 362 F.3d 692, 696–97 (10th Cir. 2004) (holding that
plaintiff's amended complaint did not relate back to the original filing date when plaintiff substituted a
party's name for "John Doe" because such an amendment does not remedy "a formal defect of the type
Rule 15(c)(3) was meant to address").  Plaintiffs' § 1983 and § 1985 claims are subject to a two-year
statute of limitations.  *Lyons v. Kyner*, 367 F. App'x 878, 881–82 (10th Cir. 2010) (applying Kansas's
two-year statute of limitations to plaintiff's §§ 1983 and 1985 claims (citing Kan. Stat. Ann. § 60-
513(a)(4))).  Plaintiffs' claims against Does 1–10 are based primarily on alleged acts in March 2016.
Doc. 1 at 39 (Compl. ¶¶ 89, 90).  And the statute of limitations began to run when the alleged acts
occurred in March 2016.  *See Canfield v. Douglas Cty.*, 619 F. App'x 774, 777 (10th Cir. 2015) (holding

c.   **State Law Claims**

Plaintiffs assert state law claims of false light (Count 4), public disclosure of private facts (Count 5), and slander (Count 6) against Kathy Boyd, Laura Price, Kaylee Posson, Lora Ingles, KVC, PMHS, St. Francis, Anthony Allison, Michelle Allison, and Does 1–10; and negligence claims (Count 7) against KVC, St. Francis, Price, PMHS, and Does 1–10.  Though the Allisons argue plaintiffs' state law claims asserted against them also fail, the court declines to consider these arguments.  Instead, exercising its discretion, the court declines to exercise supplemental jurisdiction over plaintiffs' state law claims because they are the only remaining claims in this lawsuit now that the court has dismissed all of plaintiffs' federal claims.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction [when] the district court has dismissed all claims over which it has original jurisdiction."); *see also Smith v. City of Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, *and usually should*, decline to exercise jurisdiction over any remaining state claims." (emphasis added)).

The Supreme Court has directed district courts, when deciding whether to maintain jurisdiction over state law claims, to consider "the values of judicial economy, convenience, fairness, and comity . . . ."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also Mullter v. Culbertson*, 408 F. App'x 194, 197 (10th Cir. 2011) (district court did not abuse discretion when sua sponte it declined to exercise supplemental jurisdiction over plaintiff's

---

plaintiff's § 1983 claim for state's alleged Fourteenth Amendment violation accrued "when her children were first ordered removed from her custody" even though her full injury was not yet known).  Thus, even if plaintiffs had moved to substitute new parties for Does 1–10, the applicable statute of limitations would bar their federal claims because more than two years have passed since March 2016.

remaining state law claim). Each of these factors favor the court declining to assert supplemental jurisdiction over plaintiffs' state law claims.

*First*, dismissing plaintiffs' state law claims without prejudice will not waste judicial resources because no pretrial proceedings or discovery have taken place. *Second*, this result is not unfair for plaintiffs. The statute of limitations is tolled for plaintiffs' state law claims while they are pending in federal court and for six months afterwards under federal law and the Kansas "savings statute."[11] *Third*, the Kansas state courts provide the same level of convenience and fairness as the federal courts. *Finally*, Kansas state courts have a strong interest in deciding matters involving purely state law claims—like plaintiffs' claims asserted here. *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) ("'[N]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary.'" (quoting *Ball v. Rennder*, 54 F.3d 664, 669 (10th Cir. 1995))). Because all four factors favor declining supplemental jurisdiction, and no circumstance presents a compelling reason to the contrary, the court declines to exercise supplemental jurisdiction over plaintiffs' remaining state law claims.

## IV.     Conclusion

For reasons explained above, the court denies plaintiffs' Motion to Amend (Doc. 145). The court also grants defendants Anthony and Michelle Allison's Motion to Dismiss (Doc. 134) in part. The court dismisses plaintiffs' § 1983 and §1985 claims asserted against the Allisons and Does 1–10 with prejudice. And, because the court has dismissed all federal claims, the court

---

[11]     *See* 28 U.S.C. § 1367(d) (explaining that the limitations period is tolled "while the claim is pending and for a period of 30 days after it is dismissed *unless State law provides for a longer tolling period*" (emphasis added)); *see also* Kan. Stat. Ann. § 60-518 (providing a plaintiff six months to commence a new action if a previous timely action failed "otherwise than upon the merits"); *Rogers v. Williams, Larson, Voss, Strobel & Estes*, 777 P.2d 836, 839 (Kan. 1989) (explaining that a dismissal "otherwise than upon the merits" as used in the Kansas "saving statute" includes a dismissal without prejudice). So, nothing prevents plaintiffs from refiling their state law claims in Kansas court, as long as they timely file the claim under the Kansas saving statute.

declines to exercise supplemental jurisdiction over plaintiffs' state law claims.  The court
dismisses plaintiffs' state law claims against Kathy Boyd, Laura Price, Kaylee Posson, Lora
Ingles, KVC, PMHS, St. Francis, Anthony Allison, Michelle Allison, and Does 1–10 without
prejudice.  And, because it declines to exercise supplemental jurisdiction over plaintiffs'
remaining state law claims, no claims remain over which the court has jurisdiction.  The court
thus dismisses the case.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' Motion to
Amend (Doc. 145) is denied.

**IT IS FURTHER ORDERED THAT** defendants Anthony Allison and Michelle
Allison's Motion to Dismiss (Doc. 134) is granted in part for reasons explained in full in this
Order.  The Clerk of the Court is directed to terminate the 42 U.S.C. §§ 1983 and 1985 claims
asserted against Anthony Allison and Michelle Allison and enter a judgment in their favor
consistent with this outcome.

**IT IS FURTHER ORDERED THAT** plaintiffs' federal claims under 42 U.S.C.
§§ 1983 and 1985 asserted against Does 1–10 are dismissed with prejudice.  The Clerk of the
Court is directed to terminate these federal claims against Does 1–10.

**IT IS FURTHER ORDERED THAT** having dismissed all of plaintiffs' federal claims,
the court declines to exercise supplemental jurisdiction over plaintiffs' state law claims.  The
court dismisses plaintiffs' state law claims against Kathy Boyd, Laura Price, Kaylee Posson,
Lora Ingles, KVC Behavioral Healthcare, Inc., Pawnee Mental Health Services, Inc., St. Francis
Community Services, Anthony Allison, Michelle Allison, and Does 1–10 without prejudice.
This case is dismissed.

**IT IS SO ORDERED.**

**Dated this 28 day of April, 2020, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
